## MILLER v STATE

Ohio Appeals, 3rd Dist, Allen Co

No 624.  Decided June 30, 1934

Mouser, Young, Mouser & Wiant, Marion, and F. W. Durbin, Lima, for plaintiff in error.

E. M. Botkin, Lima, and Joseph H. Flick, Lima, for defendant in error.

## OPINION

By CROW, PJ.

None of these assignments of error is deemed of sufficient importance to deserve discussion, excepting that much testimony was introduced over the objection of counsel for Miller, tending to prove his guilt of offenses other than the crime charged in the indictment.

Under §13444-19, GC, most, if not all, of that testimony was admissible, the language of said section being as follows:

"In any criminal case where the defendant's motive, intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of mistake or accident on his part, or the defendant's scheme, plan or system in doing the act in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another or subsequent crime by the defendant."

Such, if any, of it as was not admissible under that section, was testified to by the defendant himself either directly or on cross-examination. Hence, Miller was not prejudiced by the admission of any such evidence as may have been improperly introduced by the state.

Thus far the court is unanimous in decision.

In the general charge, the court erred in a matter pertaining to one of the elements of second degree murder, which matter was not complained of in the brief in his behalf. Whether his counsel assumed that such error was not prejudicial, or for some other reason did not see fit to claim anything for it, we do not know, but their well-known ability and experience are such that we cannot believe they overlooked the point.

Indeed the brief presents no ground of error at all pertaining to the correctness of the charge in its relation to the homicide as having been second degree murder.

At all events, it is the practice of this court to treat as waived, any claims of error which are not treated as provided in §12248, GC, which reads as follows:

"All errors assigned in the petition in error and pointed out by a brief, shall be passed upon by the court and in every case when a judgment or order is reversed and remanded for a new trial or hearing, in its mandate to the court below the Court of Appeals shall state the error or errors found in the record upon which the judgment of reversal is founded. Errors not specified by brief may be disregarded, but the court, in its discretion may consider and decide errors which are not assigned or specified."

Plainly, it is, under that section, within the power of this court to go outside the brief for reasons to reverse a judgment, but it is not our duty to do so.

We deem it unnecessary to the proper disposal of this case, to decide, and therefore do not decide the error above mentioned which was not brought to our attention by the brief of plaintiff in error, to have been prejudicial nor do we decide that it was not, because the point was waived by the failure to insist on it in the brief.

We hold it to be the duty of a reviewing court such as a Court of Appeals in Ohio, to search for reasons to affirm a judgment but not to hunt for errors to reverse one.

Sec 12248, GC, which we have quoted

above, is in substance no different than was the practice of reviewing courts from the beginning of procedure to obtain reversals of judgments. That practice is a most salutory one in that it makes for the repose of the results of litigation in trial courts.

It has always been the purpose of this court to follow that practice without exception, albeit on one occasion the majority of the court, Judges Crow and Klinger, may have inadvertently departed, although there might be some ground for the contention that the treatment of the point was such that it came within the spirit of the rule requiring specification and argument of error.

In that case, Smethers, Executor v Railroad Company, Number 437, Court of Appeals of Mercer County, decided June 1, 1933, the brief presented the point that there was error in that portion of the general charge which submitted the issue of contributory negligence, for the reason that it did not arise either on the pleadings or by the evidence. That specification of error was not sustained, but in submitting the issue, the court did err in requiring plaintiff to prove freedom from contributory negligence as part of plaintiff's case in chief. For that error the judgment was reversed.

Whether that constituted an exception or whether it did not, we repeat that so far as the writer of this opinion and Judge Klinger are concerned, it was not intended that the case be an exception to the rule always theretofore, and since, observed by this court.

A very recent application of the rule the court has steadily aimed to follow, is admirably stated in the opinion written by Judge Guernsey, in the case of **Makley v State, Number 646, Court of Appeals of Allen County, Ohio, decided June 18, 1934, (17 Abs 305),** as follows:

"In his petition in error filed herein, the defendant makes seventy nine assignments of error, but in his brief filed in this court the errors pointed out, which under the statute and rule of this court will be the only ones considered, are confined to fifteen particulars of error."

The majority of this court, Judges Crow and Klinger will continue to make no exception whatsoever to the rule that points of error not specified and argued in the brief will be ignored, excepting that if a case should ever arise where the brief on its face would disclose either manifest in-

capability of counsel filing the brief, or a purposeful disregard of duty, or the like, the brief should be ordered stricken from the files sua sponte, and opportunity afforded plaintiff in error to obtain other counsel for preparation and filing of the brief.

And so, the judgment of the trial court in this case will be affirmed.

KLINGER, J, concurs.
GUERNSEY, J, dissents.

### DISSENTING OPINION

By GUERNSEY, J.

The plaintiff in error, Arthur Miller, who will hereafter be referred to as defendant in the relation he appeared in the trial court, on trial before a jury in the Court of Common Pleas, was convicted of second degree murder and motion for new trial being overruled, was sentenced to life imprisonment in the penitentiary.

Second degree murder is defined in §12403, GC, as follows:

"Whoever purposely and maliciously kills another * * * is guilty of murder in the second degree and shall be imprisoned in the penitentiary during life."

The evidence in this case shows that the death of Roy Boggs, with whose murder Miller is charged, resulted from concussion of the brain caused by a fracture of his skull, and the wound on his scalp and skull were of such nature as to indicate that death resulted from contact between the head of the deceased and some blunt instrument.

Evidence was offered on behalf of the state tending to show that the wounds from which death resulted, were caused by Miller striking the deceased over the head with a billy or blackjack and evidence was introduced by Miller tending to show that the wounds which resulted in the death of Roy Boggs, were caused by Boggs, who had been engaged in a scuffle with Miller for the possession of a revolver which Miller was endeavoring to take from him, accidentally falling against the bumper of a parked automobile.

As shown at page 976 of the bill of exceptions, the court charged the jury as follows:

"If the state has proven, by evidence, beyond a reasonable doubt, that the defendant killed the deceased, malice is presumed and it is also presumed to be mur-

der in the second degree and it is incumbent upon the defendant, after the proof of such killing, to prove the existence of justification, excuse or extenuation for the killing."

In the fourth paragraph of the syllabus of the case of Jones v State, 51 Oh St page 331, it is held:

"Intention to kill is an essential element of the crime of murder in this state, and must be established beyond a reasonable doubt, to authorize a verdict of murder in the first or second degree. This rule is not changed by reason of the accused contending, and introducing evidence tending to prove, that the homicide was accidental, the legal effect of such evidence being, simply, to controvert an inference of an intent to kill, which may arise from the evidence introduced by the state."

In the opinion of the court in this case, at page 436, it is stated:

"The rule has been announced in this state more than once, in general terms, that from the act of killing malice might be inferred; but in all of them the intent to kill had been established, if that intent was an ingredient of the crime."

In the case of James W. Irvin v State of Ohio, 29 Oh St page 186, it was held that:

"Where death is caused by the use of a deadly weapon, and the circumstances of the killing are detailed to a jury, some of which tend to disprove a malicious or intentional killing, it is misleading to charge the jury 'that in this case the law raises a presumption of malice in the defendant, and an intent on his part to kill the deceased'."

In the opinion of the court in this case, at page 191, in commenting upon the instruction referred to, the court says:

"But the latter instruction, though not so clearly erroneous, was more palpably prejudicial to the defendant as misleading to the jury. As an abstract proposition, where the circumstances of a homicide are not known, further than the mere fact that the death was caused by the use of a deadly weapon, we do not deny that the jury may, from such fact alone, infer both malice and a purpose to kill. But where the attending circumstances are shown in detail, some of which tend to disprove the presence of malice or purpose to kill, it is misleading and erroneous to charge a jury that in such case the law raised a presumption of malice and intent to kill from the isolated fact that death was caused by the use of a deadly weapon. In such case the presence of malice or intent to kill must be determined from all the circumstances proven, including, of course, the character of the weapon."

There is an extended discussion of the presumptions with reference to second degree murder, in the case of Bailus v State, O.C.C. Reports, Volume 16, page 226, and after analyzing the various cases on the subject, the court in its opinion at page 247, states that:

"The true rule deducible from the Ohio cases is that where all the attending circumstances of a homicide, including the use of a deadly weapon, appear in evidence, the jury should not be told that a presumption of malice or intent to kill arises from the fact that a deadly weapon was used."

It is clear from the decisions above referred to, that it is only in cases where the circumstances of the homicide are not known further than the mere fact that the death was caused by the use of a deadly weapon, the jury may from such fact alone, namely, the fact that the death was caused by the use of a deadly weapon, infer both malice and a purpose to kill.

It will be noted that in the case at bar, the court in that portion of his charge above quoted, did not base the presumptions of malice and intent on the jury finding that the killing had been done by means of a deadly weapon, but based them solely on the jury finding the defendant killed the deceased, and under the charge as given, the jury, if it found that the defendant killed the deceased unintentionally or through accident, were required to return a verdict of second degree murder.

The charge as given was clearly erroneous under the decisions above mentioned as it had the effect of relieving the state from proving purpose to kill on the part of the defendant, which under the statute is a material element of the offense, and deprived the defendant of the benefit of the evidence introduced on his behalf tending to show that the killing was unintentional. It was also clearly prejudicial as it may have resulted and probably did result in the defendant being found guilty of second degree murder and sentenced to life imprisonment instead of being found guilty of manslaughter and sentenced to from one to twenty years imprisonment.

A majority of this court has refused to consider such error as a ground for reversal

of this judgment, on the ground that such error was not specified in the briefs filed in this court by plaintiff in error, although there was a general assignment of error in the charge, in the petition in error.

Under the provisions of §12248, GC, as well as under the general rules relating to proceedings in error, this court has the prerogative of considering or not considering errors not assigned or specified in the briefs. The exercise of this right is dependent on the gravity of the error rather than upon the skill or lack of skill of counsel in making their assignments and specifications of error.

The existence of the prerogative is based on the fundamental duty of the courts to administer justice and to rectify injustice. And where an error vitally affecting a substantial right of a party comes to the attention of the court in any manner, it is the duty of the court to consider such error as a ground for reversal. It is not the duty of the court to search for errors not assigned, but when such error is discovered in the consideration of a case, it is the duty of the court to consider such error.

As the right to consider errors not assigned or specified, is jurisdictional, the court cannot by any rule of practice, limit its right or its jurisdiction to consider such errors. The true test would appear to be that when an error not assigned or specified, is discovered in a case, the court may or may not consider such error, depending upon the gravity of the error.

In the case at bar, the error in the charge is of the gravest character and if a court should ever exercise its prerogative to consider errors not specified in the briefs, it would appear that it should be exercised in this case.

While in a number of opinions I have used the expression that under the statute and rule the court would consider only the errors specified in the brief, that expression was used in connection with the facts of the particular case and amounted only to an expression that the court would not exercise its prerogative of considering errors not specified in that particular case and it was not intended to lay down or acquiesce in any rule that the court would not in any case exercise such prerogative.

At one time the Ohio courts of review seemed to have regarded it as their duty to consider errors which might be disclosed by an examination of the record, even though they were not assigned. 12 Ohio Jurisprudence, 813. Subsequently, however, the Supreme Court, in the case of McHugh

v State, 42 Oh St 154, laid down the rule that:

"In a proceeding to reverse a judgment in either a civil or criminal case the court regards the record as free from error until the contrary appears; and, except as to matters relating to jurisdiction or where counsel have overlooked a statute or decision of this court governing the case, the court confines itself, ordinarily, to the errors alleged by the party complaining."

In the case at bar it is apparent that counsel for plaintiff in error overlooked the decisions of the Supreme Court in 29 Oh St page 186, and 51 Oh St page 331, above mentioned, governing this case, and this case consequently comes within the exception mentioned.

For the reason mentioned, in my opinion the judgment in this case should be reversed and the cause remanded for a new trial for such prejudicial error in the charge.