(No. 15297.—Judgment affirmed.)

THE GREAT LAKES SUPPLY COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(MILLIE G. GUILFORD, Defendant in Error.)

*Opinion filed June 20, 1923.*

1. WORKMEN'S COMPENSATION—*when finding of the Industrial Commission will not be set aside.* Where the findings and award of the Industrial Commission are not against the manifest weight of the evidence the Supreme Court will not set aside the award.

2. SAME—*when death is caused by an accidental injury—pre-existing disease.* Where an employee dies from a pre-existing disease which is aggravated or accelerated by an accidental injury, or where the injury produces pneumonia, which aggravates or accelerates the pre-existing disease and produces death within a few weeks after the injury, the death is caused by the accidental injury.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. LEE W. CARRIER, Judge, presiding.

J. C. M. CLOW, for plaintiff in error.

ELMER J. SCHNACKENBERG, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On November 29, 1921, the Industrial Commission of Illinois awarded compensation to Millie G. Guilford, defendant in error, in the sum of $15 per week for a period of 266 weeks and in addition thereto $10 for one week, as provided in paragraph (a) of section 7 of the Compensation act, for accidental injuries sustained by her husband, George Guilford, while employed by plaintiff in error, which caused his death. The award was reviewed by the circuit court of Cook county on a writ of *certiorari* and confirmed. A writ of error was granted by this court on the petition of plaintiff in error.

The only question presented for our decision in this case is whether or not the accidental injury to the deceased was the cause of his death.

On August 3, 1921, the deceased was in the employ of plaintiff in error and with a number of other employees was assisting in unloading a box-car loaded with rolls of roofing-paper and racking the rolls in the plaintiff in error's building. The car was standing by the side of the building. The other employees were passing the rolls from the car to the deceased, who was standing on a platform two or three feet wide and from four to six feet above the warehouse floor and racking them on a balcony just above where he was standing. There were no railings on the platform. The rolls of paper were about thirty inches long and eight or ten inches in diameter and weighed from forty to fifty pounds each. While engaged in this work the deceased fell from the platform onto the floor of the warehouse and one of the rolls of paper fell on top of him. As a result of this fall he received a laceration and bruise around the right eyeball, and his back, arm and leg were bruised and discolored on the left side. His right eye and cheek-bone became blue

from the bruises, the chest about his lungs was bruised, there were black-and-blue spots under both arms, and there was a cut under his chin on the right side of his face. He was carried home after his injuries and remained in bed about four days. He was treated by a physician and an eye specialist examined his eye. After he got out of bed he remained around the house a few days, sitting most of the time. He went to the doctor's office for treatment on the 8th day of August, and a day or two thereafter, at home, while attempting to walk he was not able to balance himself and attempted to steady himself by taking hold of a door but released his hold and fell over on the kitchen stove. He had two similar falls at his home thereafter. On August 14, while he and his wife were out walking, he suddenly fell on the street. He was then removed to the hospital, where he died on the 18th day of August, leaving his widow, Millie G. Guilford, and one child about eight years old, surviving him.

The foregoing facts were testified to by his widow and two of the employees who were working with him at the time of the injury. He had worked for the Great Lakes Supply Company about three years before his death and lost no time except about one week when he was laid up with the flu and about a week or two after he had received an injury to his knee. He also served on the jury for about one week during that time. He was apparently all right and in good health before his injury.

Dr. Joseph Springer, a witness for applicant, testified that he is a physician and surgeon and was coroner's physician of Cook county, and on August 19, 1921, performed an autopsy on the body of the deceased in the presence of the undertaker and Dr. Parsons, who had treated the deceased for his injuries. On inspection it was found that there was a laceration of the right side of the temporal region, of recent origin. There were some bruises upon the left side of the body and the right eye was somewhat

swollen, with a bruise around it.  The eye-ball was red.
On the left side of the back, arms and legs were small dis-
colorations.  The right lung was bound down by some old
adhesions, and the upper lobe of the right lung showed a
recent hypostatic pneumonia.  The left lung was free.  The
liver was large and somewhat rounded and there were in-
filtrated areas in it.  There was also evidence of hardening
of the arteries.  The stomach presented a marked gastritis.
The kidneys showed enlargement, with cystic formations,
showing a typical diabetic condition.  Externally on the
body there was found an indurated infiltrated area, with a
cicatrix, which simulated an old chancre.  There was no
evidence of internal injury.  The brain showed an infiltrated
area in the right half of the brain, which simulated a men-
ingitis.  Dr. Springer testified that traumatism was one of
the main factors that cause hypostatic pneumonia, and gave
it as his opinion that Guilford came to his death from hy-
postatic pneumonia and a meningitis associated with those
injuries.  He further stated that meningitis and pneumonia
were the contributing causes of death and that those con-
ditions were aggravated or accelerated by the injuries re-
ceived.  He further testified that there was a syphilitic
condition of the body but there was no active process of
syphilis, and that the meningitis and the hypostatic pneu-
monia occurred after the injury and were the contributing
causes of his death.

The only witness who testified for plaintiff in error was
its physician, Dr. Parsons, who began practicing his profes-
sion in August, 1919, and who treated the deceased after
his injuries at the instance of the plaintiff in error.  He
agreed in the main with Dr. Springer as to the physical
conditions shown by the autopsy.  While he was treating
the deceased he made the Wasserman test, which showed a
four-plus positive.  He gave it as his opinion that the de-
ceased died from hemorrhage of the brain or apoplexy, and

that the condition of the brain that was discovered by the autopsy did not result from the injury. He also stated that he did not know whether the stroke arose from causes other than the syphilitic condition shown by the Wasserman test. He did not know what produced the inflammation appearing in the right hemisphere of the brain, but stated that it might have been due to injury and that it might not. On a direct question he stated that the accident might have been contributory to his death, and that the autopsy showed hypostatic pneumonia, which might have been one of the causes of his death. He also stated that the cut or laceration found on the deceased's head might have produced inflammation of the brain, and that the cut on the head was in the neighborhood of the pus condition found in the brain.

The findings and the award of the commission are not against the manifest weight of the evidence and for that reason this court would not be justified in setting aside the award. (*Keller* v. *Industrial Com.* 302 Ill. 610; *Public Utilities Com.* v. *Springfield Gas Co.* 291 id. 209.) Where an employee dies from a pre-existing disease, which disease was aggravated or accelerated by an accidental injury, or an injury which produced pneumonia or other disease which aggravated or accelerated such pre-existing disease, the death may be said to be caused by accidental injury. (*Jones Foundry Co.* v. *Industrial Com.* 303 Ill. 410; *Timmermann* v. *Industrial Com.* 305 id. 485.) This court will give great weight to the finding of the Industrial Commission where such finding is supported by the evidence in the case.

The judgment of the circuit court confirming the award is affirmed.

*Judgment affirmed.*