56 N.J. Super. 83 (1959)
151 A.2d 563
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, AND THE TAX INVESTMENT CORPORATION OF NEW JERSEY, INTERVENING PLAINTIFF-APPELLANT,
v.
MARY E. BRYCE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 11, 1959.
Additional briefs filed May 18, 1959.
Decided May 26, 1959.
*85 Before Judges GOLDMANN, CONFORD and FREUND.
Mr. Saul A. Wittes argued the cause for intervening plaintiff-appellant, The Tax Investment Corporation of New Jersey.
Mr. Eugene T. Urbaniak, Deputy Attorney General, argued the cause for plaintiff-respondent (Mr. David D. Furman, Attorney General, attorney).
Mr. Irving I. Jacobs, substituted guardian ad litem for defendant-respondent, pro se.
*86 The opinion of the court was delivered by CONFORD, J.A.D.
This is an appeal by the purchaser of certain real property at a public sale conducted to satisfy a lien of the State for unpaid hospital maintenance charges, from a judgment of the Atlantic County Court conditionally setting aside the sale and consequent deed.
A disposition of the appeal does not require recounting all of the diverse facts spread before us in the briefs and appendices. Mary E. Bryce, a mental incompetent, has been a patient at the New Jersey State Hospital at Trenton as a public charge since September 1, 1950. She owns a parcel of real property in Ventnor City. On May 5, 1957 the State caused an institutional lien claim to be filed against her property in the amount of $7,782.98 in the office of the clerk of Atlantic County, pursuant to N.J.S.A. 30:4-80.1. The filing of the claim and the arrangement of the subsequent sale to enforce the lien were apparently the result of an offer to the State by appellant, The Tax Investment Corporation of New Jersey ("T.I.C." hereinafter), to bid at such a sale the sum of $3,000, which, it was represented, would yield the State a net sum of about $1,000 over the amounts due under concededly prior liens for municipal taxes and a real property mortgage.
A writ of execution for sale of the property under the statutory declaration of the lien as the equivalent of a County Court money judgment (N.J.S.A. 30:4-80.3) was issued on May 20, 1957 pursuant to which the Sheriff of Atlantic County levied on the property and gave due notice of a public sale to be held July 25, 1957. Included in the conditions of sale was the stipulation: "3. Subject to report of Guardian ad litem that Mary Bryce has no valid defense to this sale." On July 23, 1957, pursuant to a complaint filed by the State, at the suggestion of T.I.C., reciting the facts concerning its lien and the forthcoming sale, an order was entered in the Atlantic County Court appointing George Warren guardian ad litem for Mary E. Bryce and directing him to report to the court whether she had "a valid defense" *87 to the proceedings for enforcement of its lien brought by the State. Mr. Warren was not advised of his appointment until after the sale. He filed a report in the County Court January 29, 1958 stating that he had not been able to protect the interests of the incompetent at the sale because he was not aware of it at the time and that he was uncertain of the authority of the County Court to appoint him in the absence of any pending action in that court.
At the public sheriff's sale July 25, 1957 T.I.C. purchased the property as highest bidder for the sum of $1,000 subject to all prior liens. It paid the purchase price and received a deed for the premises which was subsequently recorded in the office of the Atlantic County Clerk. The State was represented at the sale but no one was there to protect the pecuniary interests of the incompetent, notwithstanding the Attorney General takes the position that the presence at the sale of a state representative may be regarded as a representation of a state mental patient in the character of parens patriae.
On September 21, 1957 T.I.C. contracted to sell the property for $5,500, payable $1,500 on closing of title and $4,000 in installments over a five-year period. As of June 1958 T.I.C.'s investment in the property by way of purchase price at the sale and assumption of prior liens amounted to $3,472.84.
Pursuant to a notice by T.I.C. dated January 29, 1958 to intervene in the proceedings initiated by the aforementioned complaint filed by the State, based upon the "cloud" on its title arising from the failure of the guardian ad litem to file a report, the County Court appointed Irving I. Jacobs as substituted guardian ad litem for Mary E. Bryce in the place and stead of George Warren and directed him to file a report as to whether the incompetent had a valid defense to the proceedings for enforcement of the State's lien. Such a report was filed June 4, 1958, which, in effect, sought an invalidation of the sale for the reasons that (a) the statute did not give the State's lien the status of a judgment such *88 that execution could properly be issued thereon; (b) to accord the filing of the lien the status of a judgment without the prior giving of notice and holding of a hearing on the State's claim was violative of the constitutional due process requirement; (c) the issuance of execution against the incompetent and the conduct of the sale without prior appointment of a guardian ad litem was erroneous, the purchaser at the sale being bound by notice of the fact of incompetency of the owner; and (d) the sale produced an unconscionably low price.
The order presently under review eventuated from a hearing on cross-motions, one by the substituted guardian ad litem to set aside the sale and the other by T.I.C. to reject the guardian's report and to confirm the sale. The court's conclusion, embodied in an order, was that the sale to T.I.C. had resulted in an "excessive profit to said purchaser" and that the sale and sheriff's deed should be set aside unless T.I.C. deposited in court the difference between the resale contract price of $5,500 and its investment in the property of $3,472.84, same to be declared the property of the incompetent.
In our judgment the order under review should be affirmed to the extent that it sets aside and vacates the sheriff's sale and deed, but without the condition that T.I.C. refuse to make the deposit referred to. Our conclusion is based solely upon the ground that the circumstances under which the sale was conducted constituted it invalid as to the incompetent in view of the absence of an appointment of a guardian ad litem in time to permit the interests of the incompetent to be adequately protected. But since the State may wish to resell the property in satisfaction of its lien we are impelled to deal with the other objections to the proceedings advanced by the substituted guardian ad litem as well.
At the outset, we reject the argument that the sale price was unconscionably low. Having in mind the amount of prior liens, we regard it as substantial  not so grossly *89 inadequate as, unaccompanied by other vitiating circumstances, would warrant its judicial nullification. If not for the more basic defect to be discussed hereinafter mere inadequacy of price would not alone warrant setting aside the sale. See Karel v. Davis, 122 N.J. Eq. 526, 530, 531 (E. & A. 1937).
The substituted guardian ad litem also argues that the statutory lien does not constitute a judgment upon which execution may issue. The statutory language plainly implies the contrary. N.J.S.A. 30:4-80.3 states that when filed the lien "shall have the force and effect of a money judgment of a County Court." There is nothing to be found elsewhere in the statute to justify a construction according such a judgment anything less than all the attributes of an ordinary judgment, including that of enforceability by execution out of the court.
In the alternative, the guardian ad litem contends that the statute, so understood, denies the incompetent due process because it does not provide for a hearing on notice in advance of the effectuation of a judgment by the mere filing of the lien. But the statute does provide that "[A]ny person affected in any manner, whether directly or indirectly, by any lien, filed hereunder, and desiring to examine into the validity thereof or the facts and circumstances surrounding the entry thereof, may do so in an action brought in the court wherein the judgment of commitment of the patient was made," or, in cases of voluntary patients, in the County Court of the county where the patient last resided. N.J.S.A. 30:4-80.7. There is thus apparently full opportunity for a patient subjected to such a lien-judgment to have a plenary judicial inquiry into the substance of the claim and the procedure employed in enforcing it.
The statute would seem to meet procedural due process requirements within the special rule enunciated in the line of cases illustrated by Coffin Bros. & Co. v. Bennett, 277 U.S. 29, 48 S.Ct. 422, 72 L.Ed. 768 (1928), to the *90 effect that the creation and direction for execution by statute of a lien in favor of or enforceable by a sovereign government does not offend due process by mere reason of the fact that there is no provision for antecedent judicial hearing on notice, provided there is afforded an effective opportunity for such a hearing at the request of the party affected at some stage of the proceedings. See also American Surety Co. v. Baldwin, 287 U.S. 156, 168, 53 S.Ct. 98, 77 L.Ed. 231 (1932); Phillips v. Commissioner, 283 U.S. 589, 596, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); People v. Skinner, 110 P.2d 41, 48 (Cal. Sup. Ct. 1941), rehearing denied and opinion approved in 18 Cal.2d 349, 115 P.2d 488, 149 A.L.R. 299 (Sup. Ct. 1941); United States v. Manufacturers Trust Co., 198 F.2d 366 (2 Cir. 1952); Harvey v. Early, 66 F. Supp. 761 (D.C.W.D. Va. 1946). Cf. Den ex dem. Murray v. Hoboken Land and Improvement Co., 18 How. 272, 59 U.S. 272, 15 L.Ed. 372 (1856). Compare the statute discussed in Tube Reducing Corp. v. Unemployment Compensation Comm. of New Jersey, 136 N.J.L. 410, 415 (Sup. Ct. 1948), affirmed 1 N.J. 177 (1948).
We are therefore unable to subscribe to the argument that the statute is on its face unconstitutional. Whether it is susceptible of such literal construction and effect, as, in other circumstances, might unconstitutionally deny a particular hospital patient adequate relief against an unmerited lien-judgment we will not here inquire, as the incompetent, through the guardian, claims no defense to the lien on the merits, and her right to relief against the method of enforcement of the lien before us here will be substantiated on another, though cognate, basis. Isolantite, Inc. v. United Electrical, Radio and Machine Workers, 132 N.J. Eq. 613, 619 (E. & A. 1942).
The result in the case before us is dictated by the recent decision of the United States Supreme Court in Covey v. Town of Somers, 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956). It was there held that tax foreclosure proceedings *91 resulting in the sale of property of a mental incompetent, known to be such by the foreclosing municipality, were invalid for denial of due process notwithstanding that the statutory notice was duly given the property owner and the proceedings were regular in all other respects. The court reasoned that without the appointment of a guardian ad litem at a time when the interests of the incompetent could be effectively protected, the statutory notice was tantamount to no notice at all, as a person wholly unable to understand the proceedings against her property could not be regarded as able to avail herself of the statutory procedures for redemption or answer (351 U.S. at pages 146, 147, 76 S.Ct. at page 727). It may be significant, however, that the court stressed the substantial value of the property as compared with the amount of the lien foreclosed. Note, also, the fruitless outcome of the proceedings in Town of Somers v. Covey, 2 N.Y.2d 250, 159 N.Y.S.2d 196, 140 N.E.2d 277 (Ct. App. 1957), certiorari denied 354 U.S. 916, 77 S.Ct. 1378, 1 L.Ed.2d 1432 (1957), because of the failure of the incompetent's committee (guardian) after appointment to pursue appropriate remedies within statutory time limitations.
The Covey case is apposite here. The State knew, of course, that Mary Bryce was incompetent and unable to protect herself either as to the amount of the lien (as to which, on the merits, there appears to be no dispute) or by trying to prevent a sale of the property below its value, so as to reduce any deficiency on the State's judgment claim, or, possibly, save the property by refinancing the obligations against it. We do not agree with T.I.C.'s contention that these were rights of only conjectural value to the incompetent. She is entitled to the opportunity to show the contrary at a new sale.
While a guardian ad litem was in fact appointed, this was of no use to the incompetent as the appointment took place only two days before the sale and the appointee had no knowledge of his designation at the time of sale. The *92 only way in which the incompetent can be restored to her former position is by vacating the sale, so that, in any later proceedings to enforce the lien, she may be properly protected by a guardian ad litem. Anything to the contrary of this conclusion which may be argued on the basis of the language of the court in City of Newark v. Yeskel, 5 N.J. 313, 328 (1950), cited by T.I.C., must be regarded as controlled by the decision in Covey, at least as to cases where, as here, the claimant knows of the affected party's mental incompetence when prosecuting the proceedings.
Finally, T.I.C. contends that the County Court was devoid of jurisdiction to set aside the sale once the sheriff delivered the deed, citing Masi v. Mestice, 12 N.J. Super. 140 (App. Div. 1951). That decision, however, rested on the lack of jurisdiction in a county court to vacate a deed on purely equitable grounds. See Donnelly v. Ritzendollar, 14 N.J. 96, 104 (1953). In the present case (apart from any question as to our original jurisdiction, on any appeal, to effectuate constitutional justice by either equitable or legal remedies) the procedural defect below which rationalizes our decision is of a constitutional, or legal, nature, and thus within the jurisdiction of the County Court to remedy in fullest scope, including by cancellation of the deed, even if that is regarded as an equitable remedy. Constitution, Art. VI, Sec. IV, par. 5; Tumarkin v. Friedman, 17 N.J. Super. 20 (App. Div. 1951).
In any case, T.I.C. is precluded from making this point for two other reasons. First, the conditions of sale required a report by the guardian ad litem as to defenses, and no report had been filed when T.I.C. accepted the deed. Second, it is estopped to complain of the action of the County Court, the judgment under review having been the direct procedural consequence of its own application to that court to have a substituted guardian ad litem appointed who should report as to the incompetent's defenses. T.I.C. will not be permitted to take the position, in effect, that by that motion it was only asking for a rubber-stamp judicial approval *93 of its title and not inviting an inquiry as to its invalidity by the guardian in any respect germane to these proceedings, and a consequent determination thereof by the court.
In all equity, however, T.I.C. is entitled, upon cancellation of its deed, in addition to a return by the State of its payment at the sale, to be reimbursed for the moneys it paid out in discharge of prior liens after purchasing the property at the sale. It will retain a prior lien on the property therefor, but without interest subsequent to the date of payment. The judgment on remand will so provide and for cancellation of the deed.
Judgment modified in accordance with this opinion. No costs, except that the guardian ad litem may apply to the County Court for allowance of fees and disbursements in connection with the appeal.