86 N.J. Super. 159 (1965)
206 A.2d 200
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NATHANIEL ROBERTS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 4, 1965.
Decided January 12, 1965.
*161 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Kenneth J. Dawes, Jr., assigned counsel, argued the cause for appellant.
Mr. Edward J. Phelan, Assistant Prosecutor, argued the cause for respondent (Mr. Vincent Panaro, Prosecutor, attorney).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant, a State Prison inmate, was indicted, tried and found guilty by a jury for atrocious assault and battery upon a prison guard. The single question posed on this appeal is that defendant's fundamental right *162 to a fair trial was violated when he was compelled to appear before the jury with his feet and hands shackled. The matter is one of first impression in New Jersey.
After the State had rested, defendant took the stand in his own behalf, shackled hand and foot. His counsel objected to defendant's being chained while in the witness box. In overruling the objection the trial judge said:
"I will ask the jury, of course, to disregard the fact that he is [shackled]. The request was made to me on the basis that it's routine custodial supervision, according to routine required by the State Prison, and I ask no questions. If that's it, that's it. There is no reflection on the witness intended. It has absolutely nothing to do with what we are inquiring into here today and I will ask the jury to please to disregard the fact that this type of custodial supervision is being executed at this time. That's as much as I can say on the subject.
I would prefer that this not be necessary but they asked for it and I had to do it. You may proceed."
A defendant in a criminal trial has, from the earliest days of the common law, had the right to appear in court free of restraint. Hale, who became chief justice in 1671, said that "The prisoner, tho under an indictment of the highest crime, must be brought to the bar without irons, and all manner of shackles or bonds * * * unless there be a danger of escape * * *." 2 Hale's Pleas of the Crown, 219 (1678). The same injunction appears in 4 Blackstone's Commentaries, c. 25, p. 317 (1769). Hawkins, in the second volume of his Pleas of the Crown, c. 28, § 1, p. 308 (1716-21), said that a defendant "ought not be brought to the Bar in a contumelious Manner; as with his Hands tied together, or any other Mark of Ignominy and Reproach; nor even with Fetters on his Feet, unless there be some Danger of a Rescous [rescue] or Escape," citing such ancient authorities as Brackton and Fleta.
Such has been the rule in this country from the time the matter was first considered. See, e.g., People v. Harrington, 42 Cal. 165, 10 Am. Rep. 296 (Sup. Ct. 1871); State v. Kring, 1 Mo. App. Rep. 438 (Ct. App. 1876), affirmed 64 Mo. *163 591 (Sup. Ct. 1877). And see 23 C.J.S., Criminal Law, § 977, p. 904 et seq.; 14 Am. Jur., Criminal Law, § 132, p. 855. It was said in Way v. United States, 285 F.2d 253, 254 (10 Cir. 1960), that under ordinary circumstances a defendant's freedom from handcuffs, shackles or manacles is an important component of a fair and impartial trial, and that such procedure should not be permitted except to prevent his escape or his injuring others, and to maintain a quiet and peaceable trial. Cf. Odell v. Hudspeth, 189 F.2d 300, 302-303 (10 Cir. 1951), certiorari denied 342 U.S. 873, 72 S.Ct. 116, 96 L.Ed. 656 (1951).
Defendant in State v. Kring, above, was tried and convicted of murder in the first degree. There, as here, error was claimed in the trial court's overruling of defense counsel's motion to have the accused's handcuffs removed, the judge giving as his reason that defendant had assaulted the husband of the deceased at the first trial of the cause. The Court of Appeals reversed, observing that there was no ground to suppose that the earlier assault would be renewed; but that aside, the assault was insufficient reason for compelling the prisoner to stand trial for his life with gyves upon his wrists and his hands bound together. There was no contention of danger of escape, but if there were, other means could have been used to prevent it. The court suggested the presence of guards or placing the accused within an enclosed space within the bar of the court, as was the English custom. On review, the Supreme Court of Missouri found the law to be very clear that without some good reason authorizing the trial court to depart from the general practice in England and in this country, the shackles should be removed when the prisoner was brought before the jury for trial.
"We have no doubt of the power of the criminal court, at the commencement, or during the progress of a trial, to make such orders as may be necessary to secure a quiet and safe one, but the facts stated by the court in this case, as shown by the record, that the prisoner had assaulted a person in court, about three months before the term at which he was tried, would hardly authorize the court to assume that, on his trial for life, he would be guilty of similar outrages. *164 There must be some reason, based on the conduct of the prisoner. at the time of the trial, to authorize so important a right to be forfeited. When the court allows a prisoner to be brought before a jury with his hands chained in irons, and refuses, on his application, or that of his counsel, to order their removal, the jury must necessarily conceive a prejudice against the accused, as being in the opinion of the judge a dangerous man, and one not to be trusted, even under the surveillance of officers. Besides, the condition of the prisoner in shackles may, to some extent, deprive him of the free and calm use of all his faculties. We, therefore, concur in the opinion of the court of appeals on this point." (64 Mo., at pages 592-3)
The rule which emerges from a reading of the federal decisions and those of other states is that the trial court undoubtedly has the discretion to keep a defendant manacled, or to order that he be otherwise restrained. However, that power is sharply limited; there must be sound reason for its exercise. Without such reason, as was said in State v. Kring, above (64 Mo., at page 593), "the jury must necessarily conceive a prejudice against the accused, as being in the opinion of the judge a dangerous man, and one not to be trusted." And the fact that a prisoner appears in shackles "may, to some extent, deprive him of the free and calm use of all his faculties." The result would be a denial of the fair trial guaranteed under the Sixth Amendment to the Federal Constitution and under Art. I, par. 10 of the New Jersey Constitution (1947).
That a strong case of necessity can be made out for a trial court's exercise of its discretion in ordering a defendant to stand trial while handcuffed, is abundantly clear. United States v. Bentvena, 319 F.2d 916 (2 Cir. 1963), provides a dramatic example. Thirteen defendants were being tried for violations of the federal narcotics laws. From the very opening of the trial defendant Panico and some of his co-defendants staged outbursts in the court room. On one occasion Panico climbed into the jury box, pushing the jurors in the front row and screaming vilifications at them, the judge and the other defendants. On another occasion defendant Mirra threw a chair at the prosecuting attorney. The trial judge responded to these and other outbursts by having the perpetrators gagged and shackled, as well as ordering an increased *165 number of marshals to be present in the courtroom. All this was held not reversible error.
Cf. State v. Roscus, 16 N.J. 415 (1954), the only New Jersey case we have found touching the matter of shackling. There defendant was tried and convicted of first degree murder. On the eleventh day of the trial he had been brought before the trial judge, but not the jury, in a restraining belt. Defendant claimed that such procedure impaired his fundamental rights. Chief Justice Vanderbilt said:
"* * * This unorthodox procedure was necessitated by the defendant's frequent outbursts during the trial on the previous day, and his threats that he would not return to the courtroom for the balance of the trial. The defendant was kept in the restraining belt only during a brief appearance before the trial judge and it was removed prior to the appearance before the jury. Clearly the defendant's rights were not impaired." (at page 428; italics ours)
This is not our case, but the court's characterization of the procedure as "unorthodox" clearly reflects its attitude regarding the practice and indicates that it would follow the well-recognized general rule, at least on the facts of the record before us.
In addition to a defendant's conduct at the time of trial, as in Bentvena, it has been held that the discretionary power to manacle an accused may be based on other criteria. Thus, the court in Cwach v. United States, 212 F.2d 520, 527-8 (8 Cir. 1954), said that defendant's reputation, his known criminal record, his character, and the nature of the case must all be weighed. And see Odell v. Hudspeth, above, 189 F.2d 300; DeWolf v State, 107 Okla. Er. 311, 245 P.2d 107, 113 et seq. (Okla. Ct. Crim. App. 1952); 96 Okla. Er. 382, 256 P.2d 191 (Okla. Ct. Crim. App. 1953); DeWolf v. Waters, 205 F.2d 234 (10 Cir. 1953); certiorari denied 346 U.S. 837, 74 S.Ct. 56, 98 L.Ed. 358 (1953).
There is nothing in the record before us which throws light on defendant's character or criminal record. The State's brief mentions "a history of escape, conviction of murder," but the bare assertion stands without support. It may be that defendant, an ex-prizefighter, is a man of hairtrigger temper. There *166 may be a history of escape. His criminal record might persuade a trial judge that it would be safer to see to it that he had leg irons or handcuffs while in court. We have none of this before us, and if the trial judge did, he made no note of it.
Nowhere in the record does it appear that defendant was violent while in court, or that he conducted himself in other than an entirely proper manner. Nor is there any showing that he had threatened to escape before he was returned to confinement.
There was no exercise of discretion here. Our quotation from the record at the head of the opinion shows that the trial judge had been requested by the State Prison authorities to keep defendant shackled, as a matter of "routine custodial supervision." That being the case, he said, "I ask no questions. If that's it, that's it." And though the judge stated he would prefer that shackling were not necessary, "they [custodial authorities] asked for it and I had to do it." There was thus a complete resignation of the exercise of discretion; it was the prison authorities who dictated the shackling, not the judge.
The power to order a defendant to stand jury trial while handcuffed or shackled calls for a meaningful exercise of judicial discretion. The information upon which the judge acts need not necessarily come from evidence formally offered and admitted at the trial. His knowledge may stem from official records or what law enforcement officers have told him. State v. McKay, 63 Nev. 118, 165 P.2d 389 (Sup. Ct. 1946), rehearing denied 63 Nev. 180, 167 P.2d 476 (Sup. Ct. 1946); Gray v. State, 99 Tex. Cr. R. 305, 268 S.W. 941 (Ct. Crim. App. 1924); Hall v. State, 199 Ind. 592, 159 N.E. 420 (Sup. Ct. 1928); DeWolf v. State, above. It has even been said that the trial court may take judicial notice of facts generally within the limits of its jurisdiction. Makley v. State, 49 Ohio App. 359, 197 N.E. 339, 346 (Ct. App. 1934). However, such information or knowledge should be spread on the record before trial, and out of the presence of the jury, and defendant *167 should be afforded reasonable opportunity to meet that information. This will provide a record on which an appellate court can determine if the trial judge has properly exercised his discretion, i.e., whether there were reasonable grounds for apprehension as to defendant's conduct.
The entire matter should be aired by a hearing, however informal, but on the record, at the time the custodial authorities propose to bring the accused into court, so as to enable the judge to make his decision out of the presence of the jury panel. See DeWolf v. State, above, 245 P.2d 107; People v. Kimball, 5 Cal.2d 608, 55 P.2d 483 (Sup. Ct. 1936). Cf. the leading New York case of People v. Mendola, 2 N.Y.2d 270, 159 N.Y.S.2d 473, 140 N.E.2d 353 (Ct. App. 1957), reversing the Appellate Division, 1 A.D.2d 413, 151 N.Y.S.2d 278 (App. Div. 1956), where the court, after remarking that the sheriff, in the discharge of his duties, had the initial responsibility of determining whether the accused should be handcuffed during the trial, but that it was for the trial judge to decide the question for himself, said:
"* * * It may be that in determining whether handcuffs are reasonably necessary in a given case, the better practice would be for the trial judge to take testimony as to the necessity for the handcuffs and state for the record his reasons for confirming the decision of the Sheriff in that respect. Such procedure would undoubtedly facilitate a review by the appellate courts of the trial court's determination. However that may be, the fact that the trial court has not followed what might be considered the `better practice' before approving the Sheriff's action, cannot serve to justify the ordering of a new trial upon the ground that the trial court has prejudicially abused its discretion as a matter of law where, as here, it appears from the record itself that the Sheriff had reasonable cause for handcuffing the accused. The fact that we are unable to determine from the record how detailed a knowledge of the facts of the escape and of defendant's compulsive urge to escape from custody the trial court possessed, is not dispositive. What is dispositive is the fact that the record reveals sufficient evidence to justify the trial court's refusal to order the handcuffs removed from Mendola," (2 N.Y.2d, at page 277, 159 N.Y.S.2d, at page 478, 140 N.E.2d, at page 356; italics ours)
Defense counsel desiring to object to the accused being brought before the court in handcuffs or chains, may move, *168 before the jury has taken its place and the trial begins, to have the restraints removed. R.R. 3:5-5(a). The trial judge would then hold a hearing before making his decision. See R.R. 3:5-5(b)(4). These rule provisions have as their source Federal Criminal Rule 12(a) and (b). Such a hearing was held in People v. Bryant, 5 Misc.2d 446, 166 N.Y.S.2d 59 (Cty. Ct. 1957).
Of course, where a defendant so conducts himself as to completely disturb the orderly process of the trial, as in the Bentvena case, above, and People v. Loomis, 27 Cal. App.2d 236, 80 P.2d 1012 (Ct. App. 1938), the court may then and there order that he be restrained. So, too, where in the course of the trial there is evident danger of defendant's escape, or restraint is necessary in order to protect others from an attack by the prisoner. People v. Mendola, above, 151 N.Y.S.2d, at page 280. In such cases there is no necessity for a hearing; what occurs takes place in the face of the trial court.
In any case where the trial judge, in the exercise of sound discretion, determines that the defendant must be handcuffed or shackled, it is of the essence that he instruct the jury in the clearest and most emphatic terms that it give such restraint no consideration whatever in assessing the proofs and determining guilt. This is the least that can be done toward insuring a fair trial. It may be doubted whether any jury, even with the best of cautionary instructions, can ever dismiss from its mind that the accused has appeared before it in handcuffs or chains. His being restrained must carry obvious implications even to the most fairminded of juries. Unless the situation is so exceptional as to call for shackles, the trial court should instead arrange for additional guards in the courtroom for the protection of all present and the prevention of any disorder or escape. The decision as to what course should be followed must, as already stated, lie in sound discretion, exercised with due regard to all the circumstances.
The conviction is reversed and the cause remanded for a new trial.