THE STATE OF OHIO, APPELLEE, *v.* CARTER ET AL.,
APPELLANTS. ■

[Cite as State v. Carter (1977), 53 Ohio App. 2d 125.]

(Nos. 1041 and 1042—Decided March 16, 1977.)

*Mr. Christopher D. Stanley,* for appellants.
*Mr. Lynn Grimshaw,* for appellee.

STEPHENSON, J. This is an appeal from judgments of conviction entered by the Scioto County Court of Com-

mon Pleas upon jury verdicts returned in a joint trial finding William Carter and Samuel Bernard, Jr., appellants herein, guilty of attempted escape, a fourth degree felony, in violation of R. C. 2921.34(A). Pursuant to subdivision (C) of that statute, appellants were sentenced to a term of two to five years to be served consecutively to their present sentence. The following errors are assigned:

"I. The trial court erred when it took away from the defendants the right to defend themselves.

"II. Shackling of the defendants during the course of the trial before the jury was a violation of the defendants rights under the due process clause of the fourteenth amendment.

"III. The trial court erred when it overruled defendants motion for a change of venue.

"IV. The trial court coerced the jury into reaching a verdict after it reported that it could not reach a decision."

By a supplemental brief, an additional argument is asserted, although not formalized into a specific assignment of error, that the court erred by instructing the jury that the burden of proof with respect to the affirmative defense of duress was upon the appellants.

The record reflects that appellants were inmates of the Southern Ohio Correctional Facility, a maximum security penal institution of the state of Ohio. Prior to trial, it was stipulated by the parties that the alleged offense occurred on May 18, 1975, in Scioto County and that appellants were under lawful detention and such was known by appellants. At trial appellants did not contest the evidence of the state that they and other inmates had escaped from their place of confinement through a window and were outside of a penitentiary building, but inside the outer fence surrounding the institution, when apprehended. While appellants conceded they had escaped, they asserted the defense of duress as justification. All of the defense evidence was upon that issue and the defense of duress was submitted to the jury with the burden to es-

tablish it being placed, in the court's charge, upon the appellants. No objection was interposed with respect to the charge upon that issue.

The thrust of the first assignment of error is that appellants were denied the constitutional right of self representation under *Faretta* v. *California* (1975), 422 U. S. 806. The record reflects that as early as August 29, 1975, an attorney, Christopher D. Stanley, had appeared as counsel of record for appellants and participated in stipulation, discovery and subpoena procedures.

On September 10, 1975, appellants filed a motion, while purporting to reserve the right to represent themselves, to appoint Mr. Stanley as counsel. At the beginning of trial, on September 8, 1975, Mr. Stanley was appointed by the court and a journal entry of the appointment was filed on September 10, 1975. In the colloquy at the beginning of the trial, appellants sought an appointment of counsel because of indigency, but expressed a desire to participate with their counsel in the questioning of witnesses and jurors. The court, although attempting to persuade appellants otherwise, granted the motion.

The voir dire examination was conducted by the court, then by the state followed by Mr. Stanley. Thereafter, both appellants questioned the prospective jurors. The questions by appellants were, in the main, repetitive of questions already asked and many were immaterial to the qualifications of the prospective jurors to sit as fair and impartial jurors. After an extensive voir dire examination had proceeded as set forth above, incorporated into approximately three hundred pages of transcript, the trial court withdrew the right of appellants to personally participate further in the voir dire examination. Additionally, the court refused thereafter to allow appellants to question witnesses in addition to the examination by their attorney. Appellants were permitted to personally participate in closing arguments.

It is apparent from the record that appellants desired the advantage of active participation by appointed

counsel in their defense in addition to self-representation. In short, appellants were seeking hybrid representation. Although counsel for appellants now asserts that his was to be a "stand-by" role, his pre-trial and trial participation belies that characterization of his intended role. Their reliance upon *Faretta* v. *California, supra,* for authority to sustain their claim is misplaced.

*Faretta* v. *California, supra,* held only that the Sixth Amendment to the United States Constitution guarantees to a defendant in a state criminal trial the right to defend himself without counsel, and that where a defendant voluntarily and intelligently waives his right to counsel, the state may not force counsel upon him. It was emphasized that Faretta "weeks before trial * * * clearly and unequivocally declared to the trial judge that he wanted to represent himself and did not want counsel," and, consequently, the trial court erred in forcing him "to accept against his will a state-appointed public defender * * *." The federal courts, both prior to and subsequent to *Faretta,* have held that an accused may elect to defend himself or elect to defend by counsel, but has no right statutorily or under the United States Constitution to hybrid representation. *United States* v. *Hill* (C. A. 10, 1975), 526 F. 2d 1019; *United States* v. *Wolfish* (C. A. 2, 1975), 525 F. 2d 457; *Lee* v. *Alabama* (C. A. 5, 1968), 406 F. 2d 466; *United States* v. *Swinton* (S. D. N. Y. 1975), 400 F. Supp. 805. Likewise, state courts have denied the right of such representation and this represents the overwhelming weight of authority. 23 Corpus Juris Secundum 927, Criminal Law, Section 979(4); 21 American Jurisprudence 2d 336, Criminal Law, Section 31; annotation, 77 A. L. R. 2d 1233, Section 4. Further, it has been held that a state constitutional provision, such as Section 10, Article I, of the Ohio Constitution, which provides for an accused to "defend in person and with counsel" does not require hybrid representation. *Miller* v. *State* (1970), 86 Nev. 503, 471 P. 2d 213; *State* v. *Velanti* (Mo. 1960), 331 S. W. 2d 542; *State* v. *Thomlinson* (1960), 78 S. D. 235, 100 N. W. 2d 121.

The court below did allow appellants to argue to the

jury. Conceivably, this was because of the first paragraph of the syllabus in *Shelton* v. *State* (1921), 102 Ohio St. 376, which states:

"It is the privilege of an accused upon trial to argue to the jury in person or by counsel every controlling fact which the evidence tends to support, and every reasonable inference therefrom touching the question of his guilt or innocence, or which may tend to mitigate or lessen the penalty, where the jury are empowered to fix such penalty." (Paragraph one of the syllabus.)

The syllabus of a case must be read in light of the facts. Under the facts in the opinion, the question in issue was one only of the extent of proper argument by counsel. Hence, it is not controlling on the question of participation by both counsel *and* the accused.

Since appellants had no right of participation in the trial when represented by counsel, the court in exercising its discretion in initially allowing participation and subsequently denying such right did not commit error. The first assignment of error is overruled.

We find no error in the refusal of the trial court to grant a change of venue from Scioto County and the third assignment of error is overruled. Appellants filed a pretrial motion for such change which was not ruled upon until the voir dire examination was nearly complete. The initial motion was conclusionary in form and was not supported then, or at the time of voir dire examination, by any evidence as to the nature, extent, duration and intensity of the news coverage from the institution. Hence, the case is distinguishable at the outset from *Sheppard* v. *Maxwell* (1966), 384 U. S. 333, where the scope and intensity of news coverage prior to and during trial was such that there was little likelihood of a fair and impartial trial.

The voir dire transcript reflects that the knowledge gained by prospective jurors from pre-trial publicity was scanty at best, and all of the jurors finally selected affirmatively stated that they could decide the case fairly and impartially upon the trial evidence. It appears fur-

ther: from the transcript that the trial judge was extremely liberal in excusing any juror who voiced the slightest doubt of their impartiality. In *State* v. *Fairbanks* (1972), 32 Ohio St. 2d 34, the following was stated:

"A change of venue rests largely in the discretion of the trial court, and there are numerous cases holding that appellate courts should not disturb the trial court's ruling on a motion for change of venue in a criminal case unless it is clearly shown that the trial court has abused its discretion. *State* v. *Laskey* (1968), 13 Ohio App. 2d 91, affirmed, 21 Ohio St. 2d 187; *State* v. *Tannyhill* (1956), 101 Ohio App. 466, appeal dismissed, 165 Ohio St. 482." (Page 37.)

No such showing is made here.

The fourth assignment of error is overruled upon the authority of *State* v. *Maupin* (1975), 42 Ohio St. 2d 473. The post trial instructions in urging the jury to reach a verdict were essentially those considered in the above captioned case and found to be non-coercive. Additionally, ed as such in the second brief, wherein a complaint is made appellants did not save the claimed error by making an objection to the instructions at the time they were given. See *State* v. *Gordon* (1971), 28 Ohio St. 2d 45.

The fifth assignment of error, although not designatas to the instructions on the burden of proof applicable to the duress defense, is likewise overruled since no objection was made at trial. *State* v. *Gordon, supra*; Crim. R. 30.

The second assignment of error is directed at the refusal of the trial court to order leg iron shackles removed from appellants during the trial. No factual dispute exists that appellants were so shackled throughout the trial. The motion to remove restraints was made at the commencement of trial. The record reflects that the response of the court was as follows:

"The Court: Mr. Carter, Sheriff Knauff is responsible for the security of this courthouse and for this particular proceedings [*sic*]. Now, as the judge, of this court, I am responsible for the administration of justice, and I do not feel that it is within my capability to do so. I do

not feel that I should interfere with the precautions the sheriff feels are necessary. That is the burden of Sheriff Knauff and I will not impede his responsibility of determining what security precautions he will take."

Upon further inquiry by appellants upon the issue, the court responded:

"The Court: Miss Reporter, the motion of Mr. Carter to the court to direct the sheriff to remove the shackles from the legs of the defendants in the courtroom is overruled, and to which Mr. Bernard and Mr. Carter both interpose objection. And the court will reiterate that, if in the event that Mr. Bernard and Mr. Carter can convince the sheriff of their sincerity in the statements they make, persuade him that such precautions of security are not necessary, the court is willing to abide by the judgment of the sheriff. I have no desire to superimpose upon the sheriff any particular necessity of security, it is not the court's province to specify or deem what security is necessary, the responsibility for security precautions is within the prerogative of the Sheriff of Scioto County."

The conclusion that the sheriff and not the court had the responsibility to determine if appellants should be shackled is clearly erroneous under existing Ohio case law. *State* v. *Farmer* (1951), 90 Ohio App. 49; *State* v. *Bryan* (1942), 69 Ohio App. 306; *Markley* v. *State* (1934), 49 Ohio App. 359. Indeed, it is almost a universal rule everywhere because of the responsibility of the trial court to afford an accused a fair and impartial trial, as part of due process of law, that the trial court must exercise its discretion in such matters. In *Kennedy* v. *Cardwell* (C. A. 6, 1973), 487 F. 2d 101, the historical development of the discretionary rule is set forth. See also *Woodards* v. *Cardwell* (C. A. 6, 1970), 430 F. 2d 978; *State* v. *Roberts* (1965), 86 N. J. Super. 159, 206 A. 2d 200; *People* v. *Duran* (1976), 16 Cal. 3d 282, 545 P. 2d 1322; *United States* v. *Theriault* (C. A. 5, 1976), 531 F. 2d 281, and authorities therein cited. Ordinarily, because shackles tend to erode the presumption of innocence, the accused should be allowed to appear at trial unfettered. By the same token, it

is not an absolute right. Thus, it is stated in *United States v. Theriault, supra,* at 285:.

"An accused person is presumed innocent and is, therefore entitled to the indicia of innocence in a jury trial. In some circumstances, however, this right must bow to the competing interests of other courtroom participants and society in general. *See generally Illinois v. Allen,* 397 U. S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970). Shackling is an extreme measure, but in some circumstances it is necessary for the safe, reasonable and orderly progress of trial. *See, e. g., Kennedy v. Cardwell,* 487 F. 2d 101 (6th Cir. 1973), *cert. denied,* 416 U. S. 959, 94 S. Ct. 1976, 40 L. Ed 2d 310 (1974); *United States v. Roustio,* 455 F. 2d 366 (7th Cir. 1972) (principles apply to witnesses for defendant). The decision to shackle lies within the sound discretion of the trial court and will not be overturned by reviewing courts unless that discretion was abused. *Woodards v. Cardwell,* 430 F. 2d 978, 982 (6th Cir. 1970), *cert. denied,* 401 U. S. 911, 91 S. Ct. 874, 27 L. Ed. 2d 809 (1971); *Hardin v. Estelle,* 365 F. Supp. 39, 45-47 (W. D. Tex.), *aff'd* on other grounds, 484 F. 2d 944 (5th Cir. 1973)."

For an effective appellate review of the exercise of its discretion, it logically follows that the record should reflect those factors upon which the court exercised its discretion. See A. B. A. Standards For Criminal Justice (Trial By Jury) Part IV, Section 4.1(C) and commentary; *People v. Duran, supra; State v. Roberts, supra.*

Since the right to appear in a courtroom free of restraint is of federal constitutional dimensions, we may hold it harmless only if the error was harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U. S. 18. We are not persuaded, even though the prosepective jurors were examined upon the question, that the error can be considered harmless by the requisite degree.

On the other hand, we do not deem it necessary to reverse and grant a new trial outright. In erroneously concluding that the responsibility for the shackles was

that of the sheriff and not the court, it is apparent the court did not exercise any discretion upon the issue.[1] *State* v. *Roberts, supra; Woodards* v. *Maxwell* (S. D. Ohio), 303 F. Supp. 690. Circumstances may have existed that caused the shackling that did occur to be a reasonable precaution and justified as an exception to the general rule. Since we have found no prejudicial error intervening below in the other errors assigned, we conclude that justice can best be served by a reversal and remand for an evidentiary hearing upon the issue. If the court finds the existence of facts at the time of trial justifying the court, in the exercise of its discretion, to require the shackling of appellants, the judgments of conviction may be re-entered. If not, a new trial should be granted by the trial court. At the hearing, the fact that both appellants were confined for murder convictions and escaped from a maximum security institution would be relevant considerations.[2] As authority for such limited remand, see *State* v. *Staten* (1969), 18 Ohio St. 2d 13.

[1]We are not unaware of *State* v. *Woodards* (1966), 6 Ohio St. 2d 14, decided in 1966 wherein the action of the trial court in denying a motion to unshackle a defendant and leaving the matter up to the sheriff, in light of the trial evidence, was held not be to an abuse of discretion. In 1969, because the defendant was shackled during his trial and the trial court failed to examine and consider the facts necessary to exercise his discretion, he was granted habeas corpus relief by a federal district court. (*Woodards* v. *Maxwell* (S. D. Ohio 1969), 303 F. Supp. 690.) The grant of such relief was affirmed by the Sixth Circuit Court of Appeals in *Woodards* v. *Cardwell* (C. A. 6, 1970), 430 F. 2d 978. *State* v. *Woodards, supra,* did not pronounce a rule of law that must be followed for the reason that its disposition in the opinion as to the shackling issue was not embodied as a rule of law in the syllabus. "Only what is stated in a syllabus or in an opinion per curiam or by the court represents a pronouncement of law by this court." *State, ex rel. Canada;* v. *Phillips* (1958), 168 Ohio St. 191. We are in agreement with the conclusion (*State* v. *Roberts, supra*) that when a trial court relegates whether a defendant shall be shackled to others, there is "resignation" rather than an exercise of discretion. Hence, we have adopted what we conceive to be the majority view, that the trial court consider the relevant factors with appropriate findings.

[2]The fact, alone, that appellant was incarcerated for a serious crime and is being tried for an escape attempt is not sufficient to justify

The judgments are reversed and remanded for further proceedings consistent with this opinion.

*Judgment reversed.*

ABELE, P. J., concurs.

shackling. We agree with the California Supreme Court in *People* v. *Duran, supra,* at 293, 545 P. 2d at 1329: "The fact that defendant was a state prison inmate who had been convicted of robbery and was charged with a violent crime did not, without more, justify the use of physical restraints. As our discussion heretofore indicates, the trial judge must make the decision to use physical restraints on a case-by-case basis. The court cannot adopt a general policy of imposing such restraints upon prison inmates charged with new offenses unless there is a showing of necessity on the record."