**MAKLEY v STATE**

Ohio Appeals, 3rd Dist, Allen Co

No 646.   Decided June 18, 1934

Charles C. Hall, Sidney, and Taylor Cummins, Sidney, for plaintiffs in error.
Leo M. Winget, Sidney, and Urban H. Doorley, Sidney, for defendant in error.

Miss Jessie Levy, William Fogarty and Clarence C. Miller, Lima, for plaintiff in error.

Ernest M. Botkin, Lima, Joseph Flick, Lima, and Benjamin Motter, Lima, for defendant in error.

WILLIAMS, J, (6th Dist) sitting by designation.

## OPINION

**By GUERNSEY, J.**

Under §13436-7, GC, the prosecuting attorney has the right to appear before the grand jury for the purpose of giving information in reference to a matter cognizable by it, or advice upon a legal matter when required. He has the further right to interrogate witnesses when he deems it necessary. The conduct complained of is proper under this provision. The testimony of the witness concerning what was said and done by the prosecutor, if true, would amount to the giving of information relative to a matter properly before the grand jury and advice concerning the legal questions involved, which the prosecutor had the legal right to do and there is a presumption that the

prosecutor acted within the law. The hearing on the plea in abatement was had in the absence of the jury, as shown by the record.

The fact that there was another indictment pending against the defendant at the time the indictment on which the defendant was tried was returned, would in no way operate as a bar to the prosecution under such indictment. The action of the court in overruling the plea in abatement was correct.

### Overruling Demurrer to Indictment.

The demurrer to the indictment was based on the ground that the facts stated therein do not constitute an offense against the laws of the State of Ohio.

The indictment upon which the defendant was tried charged with the commission of the offense in the following language:

"That Charles Makley, whose real and true name is to the grand jury unknown late of said county, on the 12th day of October in the year of our Lord one thousand nine hundred and thirty three at the County of Allen, State of Ohio aforesaid, unlawfully, purposely, and wilfully killed Jess L. Sarber, the sheriff of said County of Allen while said Jess L. Sarber, was in the discharge of his duties as said sheriff."

The indictment is based on the provisions of §12402-1 GC, which is as follows:

"Whoever purposely and wilfully kills a sheriff, deputy sheriff, constable, policeman, marshal or inspector appointed under the provisions of §6212-22 GC, while such sheriff, deputy sheriff, constable, policeman, marshal or inspector is in the discharge of his duties, is guilty of murder in the first degree and shall be punished by death unless the jury trying the accused person recommend mercy, in which case the punishment shall be imprisonment in the penitentiary during life."

The indictment in this case charges a crime in plain, concise and unequivocal language, following the wording of §12402-1 GC. Neither the plaintiff in error nor his counsel could have been misled concerning the language of the charge. No request was made for a bill of particulars, which right is afforded by §13437-6, GC. All of the essential elements of the crime are charged. There is no requirement of law that the word "intent" or "intention" must be used in an indictment or other pleading charging crime. "Purposely" is synonymous with "intentionally." To state that the act was purposely and wilfully done states in plain, understandable language that the act was "intentionally" done.

Sec 12402-1, GC, makes the killing of a sheriff while in the discharge of his duty, the crime of murder in the first degree. The indorsement of the foreman of the grand jury on the indictment was therefore correct.

The amendment to §12402-1, GC, in 1925 by amended Senate Bill No. 57, had the effect of merely adding prohibition inspectors to the general class of public officers mentioned in such section and did not have the effect of repealing said section. The repeal of the prohibition amendment to the constitution did not have the effect of repealing said section. The action of the trial court in overruling the demurrer was correct.

### Overruling Motion for Change of Venue.

On the motion for change of venue, plaintiff in error offered as a witness one Neil Shaw whose testimony and some newspaper exhibits was the only evidence offered on said motion. An examination of this testimony shows that the case against Makley was given as much publicity in every county in Ohio as it was in Allen County. No evidence is offered to show a condition entitling plaintiff in error to a change of venue. In fact, this witness testified that in his opinion Makley could be given just as fair a trial in Allen County as he could in any other county of the state. The ruling on this motion rested in the sound discretion of the trial court and his order overruling the motion was not an abuse of discretion.

### Refusing Requests for Continuances.

The first contention of the defendant under this heading, is that the court erred in refusing request of defendant's counsel for a continuance of two or three days to investigate the case, the extradition proceedings and irregularities of the grand jury.

The record shows that the request was made on February 17, 1934, and the case was assigned for trial and trial begun on March 12, 1934, which afforded plaintiff in error ample time to investigate the matter of extradition. The matter of extradition was of itself unimportant in the case since the plaintiff in error was in the jurisdiction of the court, in the court room charged by an indictment with crime under the law of Ohio and there is nothing in the record to show that the plaintiff in error was extradited from any other state. Consequently there was no error in the order of the court refusing a continuance.

A further contention of the defendant

under this heading, is that the record fails to show that he was properly served with a copy of the original venire at least three days before the date of trial, as required by the provisions of §13443-1, GC, and that the record fails to show that a copy of the special venire drawn after the original venire was exhausted was served on him as required by law, and that the court erred in refusing motion of defendant for a continuance of three or four days to investigate special venire.

Sec 13443-1 GC provides as follows:

"When a person indicted for a capital offense pleads not guilty, the clerk, on order of the court, shall draw from the jury wheel, as in other cases, not fewer than 50 ballots, nor more than 75 ballots, as the court shall direct, and issue to the sheriff a venire for the persons whose names are so drawn for the day fixed for the trial; such venire shall be served and returned by the sheriff as in other cases, at least fifteen days before the date so fixed for trial, and a copy of such venire and such return shall be served on the defendant at least three days before the date of the trial."

While the record does not affirmatively show that a copy of the original venire was served on the defendant as required by this section it does not show that it was not served. The record also shows that the defendant proceeded with the examination of jurors comprising this venire, without objection. This being the case, there is no affirmative showing of error prejudicial to the defendant.

There is no requirement of law that where the original venire is exhausted, a copy of a special venire be served on a person charged with a capital offense or that any time be given to the defendant for the examination of such special venire, and it would greatly delay the progress of trials if such practice was required. The new criminal code was adopted with a view to facilitating the trial of criminal cases and preventing unnecessary delays, and such a requirement would tend to defeat the purpose for which it was enacted.

As there was no requirement of service of the copy of the special venire at any stated period of time before proceeding with the examination of jurors composing such special venire, the order of the court refusing the continuance was not erroneous.

The case of Caferelli v State, 12 Oh Ap, 91, relied on by the defendant, was based on a statute which was in effect prior to the adoption of the present Criminal Code and

had no application to the requirements of §§13443-1 and 13443-2 GC of our present Criminal Code.

The other contentions of the defendant under this heading, relate to the overruling of motions for continuance and objections to proceeding in matters preliminary to the trial proper, and the errors complained of as well as the other claimed errors under this heading hereinbefore referred to, come within the provisions of §13449-5, GC, which is as follows:

"No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court in case of any inaccuracy or imperfection in the indictment, information or warrant, provided that the charge be sufficient to fairly and reasonably inform the accused of the nature and cause of the accusation against him; nor for any variance between the allegations and the proof thereof unless the accused is misled or prejudiced thereby; nor for the admission or rejection of any evidence offered against or for the accused unless it affirmatively appears on the record that the accused was or may have been prejudiced thereby; nor for any other cause whatsoever unless it shall affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial."

and are of such character that in order to authorize a reversal of the sentence of conviction it must affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial.

In the case of State v Moon, 124 Oh St page 465, the provisions of §13449-5 GC above referred to, were held to be as mandatory as the provisions of §13442-9 GC relating to a charge to the jury on the question of punishment, and it would appear from the reasoning in the opinion in this case, that the provisions of §13449-5 GC are as mandatory as any other provision of the Criminal Code.

The court in the trial of this action strictly followed the provisions of the statute with reference to the periods of time required to elapse between the various steps in the trial, and it does not affirmatively appear from the record that the defendant was prejudiced by the rulings of the court on said motions and objections, and consequently if any error was committed in such rulings, it was not error of such a character as to authorize a reversal.

### Failure to Accord Defendant a Fair and Impartial Public Trial in Accordance With Constitutional Guarantees.

Under this heading the defendant contends that the court by requiring him to remain manacled and shackled throughout the trial, and by maintaining a military guard at the court house and jail, and a non-military guard in the court room, and using a pass system for the admission of persons, including prospective jurors, to the court house and court room, and causing such persons to be searched prior to their admission to the court room as shown in statement of facts, failed to accord him a fair and impartial public trial as provided by constitutional guarantees.

Ordinarily it is an invasion of the rights of an accused person, to force him to remain shackled during his trial, but the right to be free from bonds is not absolute, and an exception to this rule is concisely stated in 8 Ruling Case Law, page 68, §22, in the following language:

"It is recognized that it lies within the discretion of the trial court to have the prisoner shackled when it is manifest that such a precaution is necessary to prevent violence or escape, and an appellate court will not revise the trial court's action except in a clear case of abuse of discretion."

See also, Hall v State, (Indiana Supreme Court) 159 NE 420.

McPherson v State, 178 Indiana, 583, 99 NE 984. Blair v Commonwealth, 188 SW 390.

The case of Hall v State, 159 NE 420, supra, is also authority for the proposition that the knowledge upon which a court bases its discretion to refuse the prisoner's request that fetters be removed from his legs, need not come exclusively from evidence offered at the trial, and it would seem clear that upon passing upon such request the court in addition to considering the evidence developed at the trial, would have the right and duty to consider facts developed by the evidence on the trial of an accomplice immediately preceding the trial of the defendant, and should take judicial notice of facts generally known within the limits of its jurisdiction. The principle upon which this conclusion is based is well expressed by Judge Wannamaker in the opinion in the case of **Barnett v State, 104 Oh St 298**, at page 310 in the following words:

"What we know as men, having common knowledge, * * * we cannot ignore as judges."

From the record in the case at bar it appears that the plaintiff in error was an escaped convict; that he with his companions had participated in breaking in the county jail and killing the sheriff for the purpose of releasing John Dillinger, a prisoner in said jail, and that at the time of his arrest he was associated with escaped convicts and other men with criminal records who had in their possession machine guns, revolvers, bullet-proof vests and other equipment used in connection with criminal activities. In addition to this, the trial judge had knowledge, from the testimony in the case of the State of Ohio against Pierpont which was tried immediately preceding the trial of this case, of the criminal activities of the defendant, Pierpont and their associates, and of their desperate and dangerous character. It was also a matter of general knowledge in Allen County, as well as all other sections of the United States, that the defendant was reputed to be a member of a notorious criminal gang known as the John Dillinger gang, which had been engaged in bank robberies, jail deliveries and other activities in Ohio, Indiana, Illinois and Wisconsin and which was reputed to have broken into jails for the purpose of obtaining, and had obtained, machine guns, revolvers, bullet-proof vests and other equipment suitable for and used by them in their criminal activities and that John Dillinger, the leader of the gang who had been forcibly delivered from the Allen County jail through the activities of Makley and his associates, had escaped from the Crown Point, Indiana, jail through a heavily armed guard and was at large.

With knowledge of these facts it was the duty of the court to take proper precautions to meet any offensive that might be launched by the defendant and his accomplices and former associates, including John Dillinger, to release the defendant from custody.

In view of the speed of modern automobiles and other means of transportation and of the use by John Dillinger and his associates, of modern war weapons and equipment, including machine guns and bullet-proof vests, in their nefarious criminal activities, and taking into consideration the fact that one man with a machine gun, skilled in the operation of the same, is equivalent to a large number of men armed with ordinary firearms, and that the manacles and shackles on the prisoner might be the only means of preventing his liberation by his confederates in case an attempt at such liberation was made, it was necessary.

that precautions be taken which would ordinarily not be necessary for the guarding and safe-keeping of a prisoner not associated with an organized gang engaged in wholesale criminal activities. Taking into consideration the unusual and extraordinary conditions that actually confronted the court in the trial of this case, we are of opinion that he did not in any manner abuse his discretion in refusing the request of the defendant Makley to be relieved of shackles and manacles during the trial of the case, although in a case not surrounded by such unusual and extraordinary circumstances it would have been an abuse of discretion on the part of the court in refusing such request.

For the reasons above mentioned, the presence of machine guns and military guards, and the admission of persons, including prospective jurors, by passes to the court house and court room and the registration and searching of such persons before admission to the court room, were made necessary by the unusual circumstances in this case relating to the safekeeping of the defendant, and it was not an abuse of discretion on the part of the court in permitting and maintaining such military guards, machine guns and other armament in and around the court house and jail during the trial; and the presence of such military guards, machine guns and armament and the admission of persons, including prospective jurors, by passes and the registration and searching of such persons, did not prevent the defendant from having a fair and impartial trial within the meaning of the constitutional guarantees; and the record does not disclose any evidence from which the conclusion may be drawn that the trial was not fair and impartial.

All the conditions surrounding the trial which are claimed in this assignment of error to have been objectionable, were the result of precautions necessarily taken to prevent the forceful delivery, release or escape of the prisoner and were justified by the unusual conditions above mentioned, and did not constitute any invasion of the legal rights of the defendant.

In order to prevent any prejudice to the defendant which might arise from the unusual conditions surrounding the trial the court, as shown on page 775 of the bill of exceptions, charged the jury as follows:

"The court says to you that you are not to consider anything that you may have observed with reference to the defendant having been handcuffed and shackled during the trial, or how he was guarded, or relative to guards or anything else you may have observed in the handling of the prisoner or the attendants at this trial, and must not be influenced by them in the slightest degree, but you must decide the issues in this case solely from the evidence submitted and under the instructions the court has given you as to the law."

The defendant further contends that the trial was not a public trial as required by constitutional guarantees.

While the court house and surroundings were guarded by an adequate force to prevent any disturbance, any attempt at escape and any attempt to liberate plaintiff in error, there was no order on the part of the court excluding anyone from the court house premises, from the court house or from the court room. The only control the court maintained was that persons who were admitted, were required to secure passes and to register. The seating space in the court room was limited so that it was necessary to limit the passes to the capacity of the court room in order to prevent disorder. The record fails to show a single instance where any person or any class of persons were excluded from the court room. The requirement by the court that persons desiring admission to the court room secure passes and register for identification purposes, was a reasonable requirement under the circumstances surrounding the case and necessary for the preservation of order and the safekeeping of the defendant. The trial as held was a public trial within the meaning of the constitution notwithstanding the precautions exercised under the circumstances.

### Admission of Exhibits.

As shown by the record, all the exhibits to which the defendant objected which were admitted in evidence, were properly identified and were properly admitted in evidence.

### Admission and Rejection of Evidence and Failure to Prove Deceased Was Sheriff.

In plaintiff in error's brief many alleged errors in the admission and rejection of evidence are pointed out.

Under the provisions of §13449-5, GC, a judgment of conviction shall not be reversed for error in the admission or exclusion of evidence unless it shall affirmatively appear from the record that the accused was or may have been prejudiced thereby.

We have carefully examined the record

with reference to the admission and rejection of the testimony referred to in the brief of plaintiff in error and upon such examination are of the opinion that it does not affirmatively appear from the record that the accused was or may have been prejudiced by the admission or rejection of such testimony.

Under this heading the plaintiff in error makes the contention that the state failed to prove that Makley knew that the deceased, Jess Sarber, was a sheriff at the time of the commission of the crime and that proof of such knowledge was necessary to a conviction.

The plaintiff in error relies on the case of **Holt v State, 107 Oh St 307,** in which it is held that it is necessary on the trial of an indictment under the provisions of §12402-1 GC, to prove that the defendant knew the deceased was an officer as named in the statute.

The evidence in this case shows that the defendant, accompanied by Harry Pierpont and another accomplice whose identity is not established, entered the sheriff's office at the Allen County jail and stated that they were officers from Michigan City, Indiana, and that they wished to see John Dillinger, who was then a prisoner in the Allen County jail. When the sheriff Jess Sarber, who was sitting at a desk in the office, asked for their credentials, they drew and pointed their guns at him stating that they, the guns, were their credentials, and then proceeded to shoot him. The fact that they entered the jail office itself and addressed a person therein on a matter of official business necessarily connected with the office of sheriff, would of itself justify an inference that they knew that he was sheriff. The additional facts in the case that Jess Sarber asked for their credentials and they presented to him what they called their credentials and that they then shot him in order to liberate the prisoner, in our opinion proves beyond any doubt that the defendant did know that the said Jess Sarber was the sheriff of Allen County and engaged in the performance of his official duties.

## Overruling Objections and Motions Made by Defendant.

The contentions made by the plaintiff in error with reference to overruling objections and motions made by him, are all covered in the discussion of the preceding assignments of error, and we reiterate that we find no error in the rulings of the court upon the various objections and motions referred to in this assignment of error.

## Prejudice, Misconduct and Abuse of Discretion of the Court.

We do not find anything in the record indicating prejudice, misconduct or abuse of discretion by the trial court in the trial of this case.

## Misconduct of Prosecuting Attorney.

In the trial statement in any case, counsel in good faith may make statements as to what they expect to prove and then in fact fail. This certainly would not be misconduct on the part of counsel. The matter complained of in this case, that he expected to prove certain things and then failed to offer evidence tending to prove the things he alleged in his trial statement to the jury, is not misconduct in the opinion of this court. The prosecuting attorney, however, did offer evidence tending to prove each and every element of the offense with which the defendant was charged.

With reference to the argument of the prosecuting attorney, he is allowed latitude in drawing inferences and conclusions from the testimony produced, and the inferences and conclusions drawn by him in his argument, from the testimony, were proper comments on the testimony as shown by the record.

## Error in the Charge of the Court to the Jury

Under the assignment of error in the charge of the court to the jury, plaintiff in error charges error in the refusal of the court to give Special Request No. 7 presented by defendant. This request to charge related to the degrees of crime ordinarily included in a first degree murder charge. Under the indictment and evidence in this case the defendant was either guilty of murder in the first degree or was not guilty of any crime, and consequently the refusal of the court to give this charge was not erroneous.

Plaintiff in error contends that the court failed to charge that the jury are the sole and exclusive judges of the facts and the credibility of the witnesses, as provided by the statute. This charge, in strict accordance with the statute, appears on page 786 of the record in the court's charge.

Plaintiff in error also contends that the court failed to charge on presumption of innocence, as provided by the statute. Presumption of innocence was charged in Special Requests Nos. 3 and 4 of defendant, and also is incorporated in the general charge of the court.

The plaintiff in error further contends that the court erred in charging on the subject of aiding and abetting. The evi-

dence shows that Makley, Pierpont and an unidentified accomplice were at the jail office together and acted in concert in the commission of the crime charged, and these facts alone, without resort to the other evidence in the case authorized the charge which was correctly given.

We find that the charge is correct in all other respects.

The guilt of the defendant is established by the overwhelming weight of the evidence and the defendant failed to take the stand and controvert that evidence offered against him. Any errors occurring at the trial came within the purview of §13449-5 GC, and it does not affirmatively appear that any of them were or may have been prejudicial to the defendant.

Holding these views, the judgment will be affirmed.

KLINGER and WILLIAMS, JJ, concur.