**UNITED STATES of America,**
Plaintiff,

v.

**Phillip Joseph DiGRAZIA, Peter James Gushi, Anthony Francis Daddino, John J. Torello, Medo Calzavara, Rose Calzavara and Peter DiFronzo, Defendants.**

No. 62 CR 16.

United States District Court
N. D. Illinois, E. D.

Jan. 25, 1963.

James P. O'Brien, U. S. Atty., Chicago, Ill., for plaintiff.

Eugene T. Daly, Waukegan, Ill., for defendants.

WILL, District Judge.

Defendants Rose and Medo Calzavara have moved to quash the indictment in the present cause as it relates to them. The motion is based on the alleged violation of certain asserted constitutional rights in connection with their separate appearances before a Federal Grand Jury in May, 1961.

At an oral hearing in this Court pursuant to the motion, testimony was taken of both Rose and Medo Calzavara and of the F.B.I. agents and Assistant U. S. Attorney Matthew M. Corry who participated in the investigation of the case and the presentment before the Grand Jury in Milwaukee, Wisconsin. The record of this hearing as well as the opposing briefs, the affidavits of the Calzavaras and the transcript of Medo Calzavara's Grand Jury appearance are now before the Court. They disclose the following relevant information.

Medo Calzavara was subpoenaed to appear before the Federal Grand Jury for the Eastern District of Wisconsin at Milwaukee on May 16, 1962, and did so appear and testify. The Grand Jury had been convened to consider charges arising under 18 U.S.C.A. § 2314 involving the alleged transportation in interstate commerce of certain stolen merchandise. Calzavara's testimony there related to this matter, although he was not then a named defendant. He was subsequently indicted, however, and charged with violating and conspiring to violate the foregoing statute. Rose Calzavara was also subpoenaed to appear before that panel on May 16, but she was not actually called to testify until May 26. At that

time, acting on the advice of counsel, she repeatedly invoked her privilege against self-incrimination. She, too, was subsequently indicted and charged with violating and conspiring to violate 18 U.S.C.A. § 2314.

With respect to Medo Calzavara, at the time of his Grand Jury appearance he had not, as the Assistant U. S. Attorney knew, retained counsel. He was not advised of his right to consult counsel before testifying, nor was he advised either prior to or during that proceeding of his right not to answer any question which might tend to incriminate him or that anything he said might be used against him.[1] Accordingly, it is urged on his behalf that this failure to warn, at a time when he was allegedly earmarked as a "putative defendant", is sufficient, by itself, to vitiate the ensuing indictment. For its part, the Government argues that no such warning was required since Calzavara was called to testify as its witness, not as a defendant or prospective defendant, citing United States v. Scully, 2 Cir. 1955, 225 F.2d 113, cert. denied 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788 (1955) and United States v. Parker, 7 Cir., 1957, 244 F.2d 943, cert. denied 355 U.S. 836, 78 S.Ct. 61, 2 L.Ed. 2d 48 (1957). The Government further contends that it was not until after his Grand Jury testimony that information was uncovered which sufficiently linked him with the matter under investigation to warrant the return of an indictment as to him.

In their arguments, both sides make much of the appropriate label to be placed on Medo Calzavara at the time of his appearance before the Grand Jury—witness, possible defendant, prospective defendant, putative defendant, named defendant—as though the proper characterization would somehow provide a convenient solution to the problem which the motion raises. This analysis, while it may contribute to the solution, appears to miss the mark. The real question, it seems to me, ought to be whether, in the absence of a warning, Medo Calzavara may have tended to incriminate himself by his testimony before the Grand Jury. If so, the indictment must be quashed, for it would violate the constitutional precept embodied in the Fifth Amendment's privilege against self-incrimination, and all the Government's most self-serving characterizations of Calzavara's status could not save it in the face of this. Nor could it be saved by the subsequent discovery of independent information warranting his indictment.

This, of course, forces the Government to determine when a warning is appropriate. But, after all, it is not an unreasonable burden, especially since the U. S. Attorney or his assistant is in a good position to know what testimony can be expected. If the Government chooses to call a witness before the Grand Jury who is or may be a defendant, its own self-interest as well as a proper regard for constitutional due process would seem to dictate the issuance of a warning and the securing of an immunity waiver. The risk it runs in failing to warn is a quashed indictment. In order to avoid this contingency, the fair and wise practice would seem to call for a warning and the securing of an immunity waiver whenever it is even remotely possible that the testimony of a witness might tend to incriminate him. See United States v. Scully, supra.

Turning then to Calzavara's Grand Jury appearance, it is clear from an examination of his testimony there that no direct incriminating statements of fact were made by him. He was treated

---

1. Matthew Corry, the Assistant U.S. Attorney who conducted the interrogation of Medo Calzavara before the Grand Jury, testified at the oral hearing in this Court that he did not warn Calzavara of his privilege against self-incrimination because at the time of his Grand Jury appearance he considered him a Government witness, not a prospective defendant although a possible one. Calzavara also testified that he was not warned, and the Grand Jury transcript evidences no warning.

as a witness who had information of events about which the Government was desirous of apprising the Grand Jury, and the questions by the Assistant U. S. Attorney and Calzavara's answers thereto followed this tack. It is apparent from the transcript that the Assistant U. S. Attorney did not get the kind of answers he wanted. Indeed, at the oral hearing in this Court, Calzavara stated that after his Grand Jury appearance " * * * Mr. Corry got awful mad at me. He says, 'How long did it take you to think up that cute story you told the Grand Jury?' And I said, 'What do you mean? Ask Mr. McCormick (F.B.I. agent) if that isn't the truth.' "

█ While an examination of Medo Calzavara's Grand Jury testimony reveals no direct incriminating statement, there is no way to know whether in fact his appearance was incriminating in the minds of some or all the members of the Grand Jury. Certainly on the record before me, I cannot say that his testimony might not have tended to incriminate him. The only portion of the Grand Jury proceedings for which a transcript is available is Calzavara's testimony. What the U. S. Attorney or Assistant U. S. Attorney said to the Grand Jury subsequently concerning this testimony, what incriminating inferences they drew from it, how they characterized it as to truth or accuracy, etc. are all unknown.

Whether constitutional rights have been respected should not be the subject of speculation. Where, as here, there is doubt, the only proper action is to dismiss the indictment.

While the foregoing disposes of Medo Calzavara's motion, there is inherent in this situation a broad general question which merits further consideration. In this particular case, a Grand Jury transcript is available only with respect to the testimony of one witness. I understand that the practice varies from district to district and even within districts, but that in many districts the usual procedure is not to make a stenographic record, much less to transcribe the testimony, of most witnesses before the Grand Jury. In view of the importance of the Grand Jury proceedings and the several circumstances in which reference thereto is necessary, the failure to make at least a stenographic record which can be transcribed, if needed, seems most unfortunate and obviously creates opportunity for mischief.

Moreover, even where there is a transcript of the testimony before the Grand Jury, it may, as in this case, be difficult or impossible to determine whether that testimony was self-incriminating. Under all the circumstances, it would seem desirable to establish the rule that, except as to perjury indictments arising out of testimony before the Grand Jury, no individual who is not warned of his privilege against self-incrimination and executes a formal immunity waiver either upon advice of counsel or after declining such advice, may subsequently be indicted for an offense about which he was questioned before the Grand Jury. This rule would impose no greater burden on the Government than the Constitution and the law contemplate. It would merely regularize what is at present a loose and haphazard procedure.

With respect to Rose Calzavara, it is conceded that she gave no incriminating testimony before the Grand Jury. She contends, however, that the Assistant U. S. Attorney, by the form and manner of his questioning, prejudiced her in the eyes of that panel, thereby inducing the return of the indictment.

█ As previously indicated, there is no transcript of Rose Calzavara's testimony. She avers that after the Assistant U. S. Attorney had been advised of her intention to rely on her Constitutional privilege and not to testify, he nevertheless brought her before the Grand Jury and asked her certain questions, including the following:

"Q. Are you married?

"Q. To whom are you married?

"Q. You have a son, don't you?

"Q. Do you love your son?

"Q. Why are you ashamed to answer questions about your son?

"Q. Who is the father of your child?

"Q. What right have you to refuse my questions? I'll bring you before the Judge and require you to answer my questions.

"Q. What is the Fifth Amendment? Do you know what it means?

"Q. Are you an American citizen?"

The Assistant U. S. Attorney testified in this Court that he remembered asking some of the foregoing questions, did not remember asking all of them, but conceded that he might have asked them. While some of these questions are not prejudicial and might properly be asked in testing the validity of the witness' reliance on her constitutional privilege, others are clearly prejudicial and could only be calculated to discredit and impugn her in the eyes of the jurors.

Again, as in the case of Medo, there is no way of knowing on what basis the Grand Jury returned the indictment against Rose Calzavara. In fact, absent any record of the proceedings, there is no way to ascertain accurately whether any other evidence at all involving her was presented. But even assuming the presentation of other evidence which, in itself, would have warranted the indictment, it must necessarily be pure speculation as to whether that evidence or the prejudicial conduct of the prosecutor or both prompted the Grand Jury's action.

The Grand Jury exists as an integral part of Anglo-American jurisprudence for the express purpose of assuring that persons will not be charged with crimes simply because of the zeal, malice, partiality or other prejudice of the prosecutor, the government or private persons. United States v. Wells, D.C.D.Idaho 1908, 163 F. 313, 324. In this regard, it is well to remember Mr. Justice Brandeis' admonition that "[t]he greatest dangers to liberty lurk in insidious encroachment by men of zeal, well-meaning but without understanding." Olmstead v. United States, 277 U.S. 438, 479, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (dissenting opinion). It is the duty of a prosecutor presenting a case to a Grand Jury not to inflame or otherwise improperly influence the jurors against any person. Even the presence of the prosecutor while the jurors are deliberating their action, though he say nothing, may be grounds for quashing the indictment. United States v. Wells, supra.

These principles are so well grounded in our jurisprudence as not to require elaboration. Their application here leaves me no alternative but to dismiss the indictment against Rose Calzavara as well.

Accordingly, the indictment as to both Rose and Medo Calzavara is dismissed.