**UNITED STATES of America, Plaintiff,**

v.

**Richard D. WHITTED, Jr., Defendant.**

**Cr. No. 01599.**

United States District Court,
D. Nebraska.

March 23, 1971.

Richard A. Dier, U. S. Atty., and William Shaphorst, Asst. U. S. Atty., Omaha, Neb., for plaintiff.

Richard J. Bruckner, Omaha, Neb., for defendant.

MEMORANDUM AND ORDER

RICHARD E. ROBINSON, Chief Judge.

This matter comes before the Court on the motion of defendant for a judgment of acquittal notwithstanding the Verdict or for a new trial. [Filing #70]. Oral arguments have been heard and the matter has been thoroughly briefed by the respective counsel.

On June 9, 1970, a three count indictment was returned against the defendant which charged that the defendant, Richard D. Whitted, Jr., perjured himself on three occasions in testimony

before a Grand Jury. The Grand Jury which returned the indictment was the same body which had heard the testimony of the defendant in which the alleged perjured statements were given. Several pre-trial motions were filed by counsel for the defendant challenging on various grounds the validity of the Indictment returned against defendant. Said motions were overruled and a subsequent trial was held.

On September 29, 1970, the jury returned a verdict of guilty on all three counts against the defendant, Richard Whitted, the Sheriff of Sarpy County, Nebraska.

The motion now under consideration asserts that the Court erred in holding the questions asked the defendant were material to the Grand Jury investigation, a necessary element for a perjury conviction, and in not quashing the indictment. I am of the opinion that a substantial issue is present regarding the materiality of the questions asked the defendant before the Grand Jury, but do not reach said issue because the indictment returned against the defendant must be dismissed and the jury verdict set aside.

During the course of the jury trial defendant's entire testimony before the Grand Jury was read to the trial jury. I have carefully studied this testimony, that of other witnesses who testified before the Grand Jury, and the entire proceedings which led up to the returning by that tribunal of the indictment against the defendant, and have concluded that it is impossible to determine whether the indictment against the defendant was returned on the basis of evidence or by the possible prejudice and bias of jurors or both, and accordingly must therefore dismiss the indictment.

On March 4, 1970, the defendant testified before the Grand Jury which was conducting an investigation of whether there had been committed in the District of Nebraska violations of the United States gambling laws. No indictment was returned. On April 15, 1970, a Commissioner's complaint charging defendant in two counts violation of 18 U.S.C. § 1621 was filed. On May 25, 1970, the United States Attorney dismissed the complaint and later presented evidence to the said Grand Jury before which the alleged perjury had occurred. On June 9, 1970, a three count indictment was returned against the defendant. At the defendant's trial Lewis A. Bray, the Grand Jury foreman, testified that the Grand Jury had been informed of the United States Attorney's complaint, and had read the publicity concerning it. Defendant asserts that the aforementioned procedure usurped the function of the Grand Jury and created bias against the defendant, and for these reasons the June 9, 1970 indictment against the defendant should be quashed. I would not hold that the aforesaid procedure in and of itself would necessarily constitute sufficient grounds to quash the indictment, but I do hold that when the aforesaid procedure is combined with the prejudicial conduct hereinafter discussed, I am required to quash the indictment on the ground said indictment was not returned by an unprejudiced Grand Jury. See United States v. Wells, 163 F. 313 [9th Cir. 1908]; United States v. DiGrazia, 213 F.Supp. 232 [E.D.Ill.1963].

In his examination in front of the Grand Jury the defendant was interrogated as follows:

"Q. Well, did you know a lady named Mary Ann White?

A. No, never heard of her. Mary Ann, you say?

Q. Is it Marge White?

A. Marge White?

Q. Yes.

A. I know her.

Q. And didn't Danny Daniels used to go with Marge White?

A. Not that I know of.

522

Q. You've heard of him hiding in her bedroom with a camera when she was with a man?"

In the examination of Mr. Meilahn, a former deputy of the defendant's, the following colloquy took place:

"Q. Did you ever hear a rumor of his [Robert Daniels] blackmailing activities?

A. Yes, I heard that also.

Q. Did you hear that he had pictures of some man involved with assorted prostitutes which he used for blackmailing?

A. I heard something about pictures. I also heard he's supposed to have a picture of the sheriff * * *."

The innuendo and implication of the above testimony could only create bias and prejudice toward the defendant and said questions were not addressed to discover violations of federal crimes. Other questions asked of the defendant also had the natural effect of damaging the defendant's character in the eyes of the Grand Jury and thus prejudice said tribunal toward him.

He was asked in detail about the criminal record of one of his former deputies, Robert Daniels. The conduct attributed to Mr. Daniels included a wide range of criminal activity. The defendant was questioned regarding his hiring of this defendant and the defendant found it necessary to defend in front of the Grand Jury his appointment of Mr. Daniels.

In Brown v. United States, 245 F.2d 549 [8th Cir. 1957] the Court had before it an appeal of a conviction of a perjury prosecution. In commenting on the Grand Jury indictments the Court stated:

"We do not, however, subscribe to the proposition that the Constitution of the United States or the laws enacted thereunder authorize an inquisition into the life and conduct of a defendant with reference to matters that are not relevant or material."

I have concluded that several of the questions asked of the defendant in his testimony before the Grand Jury fell within the type of inquisition condemned in *Brown, supra.*

The Supreme Court has inferred that a defendant is entitled to have an indictment returned by an impartial tribunal.

In Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 [1958] the High Court said:

"An indictment returned by a legally constituted *nonbiased grand jury* * * * is enough to call for a trial of the charge on the merits." [Emphasis own] at pages 349–350, 78 S.Ct. at page 318.

In Cassell v. Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 [1950] the Supreme Court stated the issue of the case as follows:

"Review was sought in this case to determine whether there had been a violation by Texas of petitioner's *federal constitutional right* to a fair and impartial grand jury." [Emphasis own].

In United States v. DiGrazia, 213 F. Supp. 232 [E.D.Ill.1963] the court held that an indictment must be dismissed when questions asked of a defendant testifying in front of a grand jury were "calculated to discredit and impugn * * [the defendant] in the eyes of the jurors."

In United States v. Wells, 163 F. 313 [9th Cir. 1908] the court held that even though there was sufficient evidence to return true bills against several of the defendants said indictments would be dismissed because if not,

"* * * then any citizen * * * may be held to answer without having had the benefit of an investigation by the *impartial tribunal* which the Constitution has established." [emphasis own].

■ On the basis of the foregoing I have concluded that the Due Process Clause of the 14th Amendment constitutionally requires that an indictment be

returned against a defendant by an unprejudiced grand jury.

There is no way for me to know whether the evidence presented to the Grand Jury or the bias and prejudice created against the defendant or both caused the Grand Jury to return the indictments against the defendant. In DiGrazia, supra, indictments returned against the defendants were dismissed. There the court set forth the following questions that had been asked of a defendant:

"Q. Are you married?

"Q. To whom are you married?

"Q. You have a son, don't you?

"Q. Do you love your son?

"Q. Why are you ashamed to answer questions about your son?

"Q. Who is the father of your child?

"Q. What right have you to refuse my questions? I'll bring you before the judge and require you to answer my questions.

"Q. What is the Fifth Amendment? Do you know what it means?

"Q. Are you an American citizen?"

The Court commented that:

"[W]hile some of these questions are not prejudicial and might properly be asked in testing the validity of the witness' reliance on her constitutional privilege, others are clearly prejudicial and could only be calculated to discredit and impugn her in the eyes of the jurors."

Similarly in this case the defendant was asked several questions which were proper and in furtherance of the investigation. However, a great many questions as heretofore set forth were not pertinent to the Grand Jury's deliberations and could only have created bias and prejudice against the defendant.

In this case I cannot say that the impartiality necessary for the return by a tribunal of a valid indictment was present. Accordingly,

It is ordered that the three-count indictment returned against the defendant on June 9, 1970, should be and is hereby dismissed.

It is further ordered that the verdicts returned against the defendant should be and are hereby set aside.