**STATE of Iowa, Appellee,**

v.

**Lloyd HANSEN, Appellant.**

**No. 56036.**

Supreme Court of Iowa.

Feb. 20, 1974.

James Furey, Carroll, for appellant.

Richard C. Turner, Atty. Gen., Fred Haskins, Asst. Atty. Gen., and Thomas R. Eller, County Atty., for appellee.

. Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES and REYNOLDSON, JJ.

LeGRAND, Justice.

The appeal in this case reaches us after a long and stormy history in district court. Although we must reverse the judgment and direct that the indictment upon which it is based be dismissed, we cannot overlook the conduct of defense counsel, which deserves our strongest censure as being dilatory, obstructive, and harassing.

Altogether the record shows some 135 filings in the case, almost 100 of them before trial. Many are routine but far too many are petitions, applications, motions— endlessly repeated—and frequently without any semblance of merit. At the same time counsel was trumpeting for a speedy trial and claiming denial of constitutional rights

because the case was so long delayed. We agree with the trial judge—one of six who became the object of defendant's carping during the course of the case—who said defendant was using delay and hindrance as a ploy to set up a basis for appeal under section 795.2, The Code, in the event of eventual conviction.

Perhaps most of our criticism should be directed against Gary R. Hall, defendant's original attorney, but present counsel is not free from blame either. Two judges disqualified themselves after counsel leveled against them serious and unfounded accusations of judicial misconduct. Other judges, too, were compelled to endure exasperating tactics and to deal with an unending barrage of procedural trivia in an effort to reach trial. It would have taken one judge almost full time to satisfy defendant's insatiable demands.

■ We recognize and applaud counsel who is zealous and diligent in protecting his client's rights. But the conduct here went far beyond that criterion. Lawyers are officers of the court, too, and actions which can most charitably be described as pettifoggery have no place in the representation of a client. See ABA Project on Standards for Criminal Justice, Approved Draft 1971, "Standards Relating to the Prosecution Function and the Defense Function."

Despite what we have said, we nevertheless set aside defendant's conviction and order the indictment dismissed. We are compelled to do so because the indictment was obtained and returned in violation of section 776.1(6), The Code.

Defendant was indicted, tried and convicted for having conspired with Timothy Duncan to set fire to an unoccupied dwelling house in Denison. The principal witness before the grand jury was Timothy Duncan, defendant's alleged accomplice. Under section 782.5, The Code, defendant, of course, could not be convicted on Duncan's uncorroborated testimony. Corroboration was exceedingly weak, a matter tac-

itly admitted by the state. However, we assume it was adequate for our present purposes and point out its weakness only because it has some bearing on what happened during the grand jury's investigation of the case.

After a number of witnesses had testified and the grand jury was apparently considering what action to take, the following occurred as shown by the county attorney's statement to the trial court during a hearing in chambers:

"No, Your Honor, [the question of polygraph evidence is not in the minutes of testimony]. The minutes of testimony had been completely prepared at the time the grand jury went out to vote. The foreman of the grand jury just asked me —I was sitting in the chambers—asked me to come back in and visit with him about whether I thought Mr. Duncan was telling the truth about the activities. And I said yes, he was. And they said, well, they wanted to visit with the sheriff and the deputy sheriff. So I said fine. I got them at this point and they testified to the grand jury that Timothy Duncan, the state's witness in this case, principal state's witness, had been taken to Des Moines and had undergone a polygraph examination in Des Moines, and this was hearsay, of course, and that on the basis of the examination that he had been found to be telling the truth."

■ Since we have been critical of defense counsel, we should not ignore this bit of impropriety on the part of the county attorney. Perhaps the request by the foreman of the grand jury may be excused, but there is no excuse for the county attorney to express his personal opinion as to the veracity of the most important witness for the state on a matter then under investigation. The rule is stated this way in 38 Am.Jur.2d Grand Jury section 33, page 979 (1968):

"Outsiders are prohibited from taking part in deliberations of the grand jury and from influencing the grand jury,

and communications with the grand jury are forbidden, except through recognized lawful channels. The appearance of persons before a grand jury to prevent an indictment or influence matters then before that body is not permissible; the grand jurors should be permitted to act free from sway or control from any source and without fear or favor.

"Officers authorized to be present during the proceedings of the grand jury should refrain from attempting to influence its action. *Accordingly, the prosecuting officer should make no attempt to influence the action of the grand jury or to give effect to the evidence adduced."* (Emphasis added.)

See also State v. Good, 10 Ariz.App. 556, 460 P.2d 662, 665 (1969).

It was improper for the county attorney to venture his personal opinion on Duncan's credibility. The matter is of overriding importance because Duncan's is the only testimony which could have resulted in an indictment. However, the evil did not even stop there. After the county attorney told the foreman that Duncan should be believed, Sheriff Donald Stehr and Deputy Larry Popp returned to the jury room. (They had previously testified in this cause but had not given any evidence concerning the polygraph test.) Here is how the county attorney describes this event: "They simply appeared briefly to indicate that one of the witnesses [Duncan] was telling the truth." It was only after this bit of outside assistance in putting before the grand jury information about the polygraph test that an indictment was returned.

We believe any fair assessment of the circumstances indicates the grand jury had misgivings about Duncan's credibility. Otherwise there is no plausible reason for the inquiry to the county attorney concerning his truthfulness or the follow-up with the sheriff and his deputy. It is quite clear, too, there could be no indictment unless Duncan was believed.

With this background, we consider defendant's motion to quash the indictment under section 776.1(6), The Code. That statute includes this provision:

"The motion to set aside the indictment can be made, before a plea is entered by the defendant, on one or more of the following grounds, and must be sustained:

1. * * *

2. * * *

3. * * *

4. * * *

5. * * *

6. When any person other than the grand jurors was present before the grand jury during the investigation of the charge, except as required or permitted by law.

7. * * *."

The motion to quash the indictment as originally filed was twice amended, all before entry of a plea. The motion as finally presented contained the following allegations as one basis for dismissing the indictment:

"That other persons than the grand jury were present before the grand jury during the investigation of the charges, contrary to law.

"That the witnesses Donald Stehr and Larry Popp who testified before the grand jury in the above case were, in fact, present together and at the same time in the grand jury room while this matter was under investigation and the grand jury was receiving testimony."

It should be noted defendant does not claim any right to have the indictment dismissed because of the county attorney's statement. We have detailed his part in the events to show the circumstances under which Stehr and Popp related the polygraph information. The narrow ground

we consider is the appearance of Stehr and Popp together before the grand jury.

■ It is well settled no one may appear before that body except a witness who is called to testify and certain others who are authorized by law to be present for official reasons. 38 Am.Jur.2d, supra, section 34, contains this statement of the principle:

"Generally, the presence of persons other than the grand jurors, witnesses under examination, and the prosecuting attorney during the sessions of the grand jury is considered unauthorized or improper."

Another applicable rule is stated in 41 Am.Jur.2d, Indictments and Informations, section 252, page 1035 (1968):

"Under a statute requiring that an indictment be set aside if an unauthorized person was present while the grand jury had the charge under consideration, an indictment must be dismissed, regardless of prejudice to the defendant, if two witnesses are present while the testimony of one or both is given."

■ Some jurisdictions demand a showing of prejudice before a violation of such a statute justifies quashing an indictment. Others hold nothing need appear except the violation itself. We believe our cases support the latter view.

In State v. Bower, 191 Iowa 713, 715, 183 N.W. 322, 323 (1921), several witnesses remained in the grand jury room after they had concluded their testimony to hear the testimony of other witnesses. We set that indictment aside with this comment:

"Not only the ethics of the case, but the mandate of the statute [then section 5319, The Code] required the exclusion of all persons during the investigation of the charge against the defendant, except such as were required or permitted by law; and it may not be said that these persons who were present during the investigation and after their testimony had

been given were either required or permitted to be in attendance * * *.

"The grand jury is a secret inquisitorial body. The oath administered to every witness called before it imposes an obligation never to reveal and always to conceal all matters to which the attention of said witness may be called during his examination. It is quite apparent that to permit three witnesses or any number of witnesses to remain in the grand jury room during the investigation of a cause would eliminate all secrecy, would convert a strictly private hearing into a public investigation, and, in the instant case would permit the prosecuting witness to dominate the hearing and make all the testimony conform to his version of the affair."

In Maley v. District Court, 221 Iowa 732, 737–739, 266 N.W. 815, 818, 819 (1936), we set aside five indictments because of the presence of unauthorized persons during a grand jury investigation. We there approved what we had previously held in the Bower case.

Later in Uhl v. District Court, 231 Iowa 1046, 1051, 2 N.W.2d 741, 744 (1942), Maley v. District Court, supra, was overruled on procedural grounds but we again confirmed the substantive holdings in *Maley*.

One of our earlier cases is in conflict with these holdings. See State v. Wood, 112 Iowa 484, 486, 84 N.W. 503, 504 (1900), where we refused to set aside an indictment upon a showing that a father was present in the grand jury room while his daughter was being examined as a witness. At least one other court (People v. Minet, 296 N.Y. 315, 73 N.E.2d 529, 530, 531 (1947) ) has attempted to distinguish this case on the rationale that the court found the father's presence was "required" under the statute, relying on this statement for support:

"Our conclusion is that the presence of one, who was *required* to go before the grand jury as a witness, while another

witness was giving testimony, is not sufficient ground for setting aside the indictment, where no other showing of prejudice to defendant is made." (Emphasis added.)

However, State v. Wood also flatly says it is not improper to call two witnesses before it at the same time, which is contrary to our holdings in *Bower, Maley* and *Uhl.*

Additional authority for our conclusion may be found in People v. Minet, supra; Commonwealth v. Harris, 231 Mass. 584, 121 N.E. 409, 410 (1919); United States v. Borys, (D.C.Ala.1959), 169 F.Supp. 366, 367; United States v. Bowdach, (D.C.Fla. 1971), 324 F.Supp. 123, 124; United States v. Carper, (D.D.C.1953), 116 F.Supp. 817, 820, 821; State v. Good, 10 Ariz.App. 556, 460 P.2d 662, 664, 665 (1969); C. Wright, 1 F.Prac. & Proc., sec. 105 (1969); Annot., 4 A.L.R.2d 392, 432 (1949).

■ There is little dispute about the facts. It is conceded Stehr and Popp appeared together before the grand jury to "tell them Duncan was telling the truth." Aside from the fact their mission was totally improper because it purported, as did the county attorney's earlier statement, to assure the jury of another's credibility—a matter the grand jury must decide itself—the joint appearance of these two peace officers demands dismissal of the indictment under the foregoing authorities.

It is argued they were called back as witnesses and therefore the statute was not violated. The record is obscure as to whether they came back as witnesses or, as the foreman put his request, to "visit" with the grand jury. It makes no difference to our conclusion. If they were recalled as witnesses, it was error to hear them together; if not, it was error to hear them at all.

We conclude that the indictment was returned in violation of section 776.1(6), The Code; that timely motion to quash was made; and that the statute mandates the indictment *must* be dismissed under such circumstances.

It is accordingly ordered that the judgment be reversed and the case remanded for entry of an appropriate order dismissing the indictment against defendant.

Reversed and remanded with instructions.