STATE of Iowa, Appellant,

v.

Kenneth Ray PAULSEN, Dennis John Hammill, Albert Epperly, Richard Moritz, Richard Fee, James C. Hartog, Glen Lamp and Carl Simms, Appellees.

Nos. 61487 to 61501.

Supreme Court of Iowa.

Dec. 19, 1979.

Thomas J. Miller, Atty. Gen., Garry D. Woodward, Sp. Asst. Atty. Gen., and Kathy A. Krewer, Asst. Atty. Gen., for appellant.

Thomas M. Kelly, Jr., and Doren M. Shifley, Davenport, for appellees.

McCORMICK, Justice.

This appeal involves questions about the regularity of proceedings of a grand jury. On defendants' joint motion, the trial court dismissed the indictments of defendants on two grounds. One was that the grand jury was illegally impaneled because the original grand jury for the quarter was not shown to have been discharged when the indicting grand jury was selected. The other was that the defendants were denied due process of law under the Iowa and United States Constitutions because an assistant attorney general improperly influenced the grand jury. In resisting the State's appeal, defendants also rely on a ground which they urged unsuccessfully in their motion, a claim that the indictments were invalid because returned by the grand jury when two members were absent. We find no merit in any of these grounds and therefore reverse the trial court.

The indictments involved here resulted from a grand jury investigation of mileage expense collection and payment practices of the Scott County Sheriff's office which was conducted in August and September 1977. The eight indicted persons included the sheriff and seven of his deputies. They were charged with obtaining money by false pretenses and conspiracy to obtain money by false pretenses, in violation of §§ 713.1 and 719.1, The Code 1977.

Defendants' motion to dismiss the indictments was submitted on written and oral stipulations and deposition testimony of Assistant Attorney General Michael Sheehy and grand juror Kristy Looney. After the trial court sustained the motion, the State moved to reopen the record to show that the original third quarter grand jury had been discharged before the indicting grand jury was impaneled. The court overruled this motion. On appeal, the State assigns the trial court rulings on both motions as error.

*I. Legality of the grand jury.* The impaneling of the grand jury was governed by the 1977 Code. The trial court agreed with defendants that the grand jury was illegally impaneled because a prior grand jury for the same calendar quarter was not shown to have been discharged when the second grand jury was selected.

In *Steinbeck v. Iowa District Court,* 224 N.W.2d 469, 474 (Iowa 1974), we held section 770.1 implies there shall be only one grand jury each quarter. However, a variance from statutory procedures in the selection of a grand jury will not invalidate an indictment unless the defendant shows he has been prejudiced. *State v. Dohrn,* 259 N.W.2d 801, 804 (Iowa 1977). A defendant has no constitutional or statutory right to have his case considered by a particular grand jury. Therefore a defendant is not automatically prejudiced when a court impanels a new grand jury instead of recalling a discharged one. *State v. Disbrow,* 130 Iowa 19, 21–23, 106 N.W. 263, 263–64 (1906).

Here the trial court found the prior grand jury had not been discharged before the new one was impaneled. Assuming this fact would make a difference if shown, we find no evidence to support the trial court's finding. It was based on the State's failure to prove the first grand jury was discharged. However, in the absence of evidence to the contrary, we presume public officials have done their duty. *State v. Bastedo,* 253 Iowa 103, 110, 111 N.W.2d 255, 259 (1961); *State v. Critelli,* 237 Iowa 1271, 1281, 24 N.W.2d 113, 118 (1946). This

means a grand jury is presumed to be legally constituted. *Cole v. State*, 68 Ga.App. 179, 180, 22 S.E.2d 529, 531 (1942); *State v. Anderson*, 120 N.J.Super. 345, 347, 293 A.2d 752, 753 (Law Div.1972), *aff'd*, 132 N.J.Super. 231, 233, 333 A.2d 291, 292 (App.Div. 1975) (per curiam). The burden was on defendants to establish the court's failure to discharge the original grand jury, and they did not fulfill it.

Consequently we hold that the trial court erred in sustaining defendants' motion to dismiss on this ground. We do not decide whether the ground would have been sufficient if the failure to discharge the first grand jury had been established. Moreover, because the State's motion to reopen was based on its desire to prove the first grand jury had been discharged, it is moot and we need not decide whether the trial court erred in overruling it.

*II. The prosecutor's conduct.* The trial court held that defendants were denied due process of law in violation of Iowa Const. art. I, § 9, and U.S.Const. amend. XIV, § 1, because prosecutor Sheehy improperly influenced the grand jury "and subtly dominated the final decision to indict." No issue of statutory authority is raised.

The court summarized its findings as follows:

> When the Grand Jury had completed called witnesses, a discussion was held about the evidence, in the presence of Assistant Attorney General Sheehy. Mr. Sheehy says he does not recall the actual words used, but they were to the effect, "What do we vote on? Do we vote on everybody who testified, or do we vote on everybody we think is guilty of something?" Mr. Sheehy previously had gone through Uniform Jury Instructions and Code sections on false pretenses and conspiracy. He then, on his own and not at the jury's request, made up a list of eleven names. Beside the first eight names he wrote criminal Code section numbers or the names of criminal charges. Beside the last three names he wrote "unindicted co-conspirator." He said that he told the grand jurors it was up to them whether or not they indicted these people, or others. Mr. Sheehy said, "I tried to avoid numerous indictments on matters I personally did not think could be proved."

> Mr. Sheehy left the Grand Jury to its deliberations and was called back from two to four times to be asked questions about conspiracy. He explained to the jurors that the three persons beside whose names he had written "unindicted co-conspirator" would meet the evidentiary test for being indicted, but that the jurors might, for some other reason, consider them as unindicted co-conspirators, and he thought he told them that one of the reasons for considering them as such was, "If you feel someone has cooperated, you may do that." He told them further, "If you do indict him (referring to one of the unindicted) I will probably have to negotiate some type of arrangement with his attorney to use his testimony." Mr. Sheehy states, "I think I gave an example of a grant of immunity, or reducing charge."

> The Grand Jury then met and indicted the eight people he had first listed, on the identical charges that he had written beside their names, and did not indict the three he had listed as unindicted co-conspirators. On Wednesday, September 13th, at its last meeting, Mr. Sheehy called to the Grand Jury's attention that he had forgotten one charge against Hammill. This was taken up by the Grand Jury and it indicted Hammill on the charge suggested.

> . . . . .

> One of the Grand Jurors [Kristy Looney], in answer to a question of whether or not Mr. Sheehy's recommendations did have a substantial influence upon her, replied: "Whether he thought there was enough evidence? Yes, I think so." Asked if she relied on Mr. Sheehy's recommendation, she answered, "We didn't rely on it completely. We took it into consideration because he knows what he is talking about, but we still went on our own, too."

Because a constitutional challenge is involved, we make an independent evaluation of the evidence. *State v. Hall*, 235 N.W.2d 702, 712–13 (Iowa 1975).

In doing so, we give no weight to the testimony of grand juror Looney. First, her testimony is equivocal; it does not support defendants' claim that the grand jury abdicated its decisionmaking function to the prosecutor. Second, a grand juror is not allowed to impeach an indictment by stating what influenced it any more than a petit juror can impeach a verdict in that manner. *O'Neill v. Keeling*, 227 Iowa 754, 761–62, 288 N.W. 887, 890 (1939) ("In this state, we have applied to grand jurors the rule applicable to petit jurors that a juror may not impeach his verdict."). *See also* §§ 771.23–.24. If a violation of due process is to be found, it must be based on evidence other than Looney's testimony.

That evidence shows the prosecutor furnished the grand jury with a list containing the names of eleven persons with indications that he thought indictments would be appropriate against eight of them on designated charges but not against the other three. The resulting indictments conformed to the list.

The prosecutor's conduct must be evaluated in the light of several well established principles. The grand jury is deeply rooted in our history; as an ex parte investigatory body, its operation generally is unrestrained by technical procedural and evidentiary rules governing the conduct of criminal trials. *United States v. Calandra*, 414 U.S. 338, 342–44, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561, 568–69 (1974). Courts are slow to invalidate indictments for alleged misconduct of the prosecutor before the grand jury. *Beatrice Foods Co. v. United States*, 312 F.2d 29, 39 (8th Cir.), *cert. denied*, 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199 (1963). They have recognized the right of the prosecutor to examine witnesses, present documents, explain the law, summarize the evidence, and request an indictment. *United States v. Gower*, 447 F.2d 187, 189–90 (5th Cir.), *cert. denied*, 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 88 (1971); *Unit-

ed States v. Kleen Laundry & Cleaners, Inc.*, 381 F.Supp. 519, 521 (E.D.N.Y.1974); *United States v. Rintelen*, 235 F. 787, 791–94 (S.D.N.Y.1916); *Turpin v. State*, 206 Ind. 345, 347–49, 189 N.E. 403, 404 (1934); *Makley v. State*, 49 Ohio App. 359, 367, 197 N.E. 339, 343 (1934). *See also ABA Standards Relating to the Prosecution Function* § 3.5 (1971).

The prosecutor is barred from expressing opinions on the facts and from attempting to influence the grand jury's action. *State v. Hall*, 235 N.W.2d at 712–13; *State v. Hansen*, 215 N.W.2d 249, 250–51 (Iowa 1974); *State v. Good*, 10 Ariz.App. 556, 558–60, 460 P.2d 662, 664–65 (1969). For example, it is misconduct for the prosecutor to engage in conduct which is calculated to discredit and impugn a defendant in the eyes of the grand jurors. *United States v. Whitted*, 325 F.Supp. 520 (D.Neb. 1971); *United States v. DiGrazia*, 213 F.Supp. 232, 234–35 (N.D.Ill.1963). Prosecutorial misconduct infringes due process when a reasonable likelihood exists that it may induce action other than that which the grand jurors in their uninfluenced judgment would take. *State v. Joao*, 53 Haw. 226, 229, 491 P.2d 1089, 1091 (1971). Misconduct which is not likely to have that effect does not deny due process. *United States v. Riccobene*, 451 F.2d 586, 587 (3d Cir. 1971); *United States v. Narciso*, 446 F.Supp. 252, 296 (E.D.Mich.1977); *Coleman v. State*, 553 P.2d 40, 47–52 (Alaska 1976); *State v. Superior Court*, 119 Ariz. 286, 288–89, 580 P.2d 747, 749–50 (1978).

Measured against these principles, we do not believe defendants were denied due process under the present record. It was not misconduct for Sheehy to give the grand jury a list showing defendants' names and potential charges. He had a right to let the grand jury know what charges he believed the evidence would support. This is permissible advice rather than improper influence. Nor does the fact the indictments conformed to the list prove otherwise. This situation is no different than the common occurrence of a grand jury returning an indictment which has been

submitted by the prosecutor in advance of its deliberations. That procedure has consistently been approved. *See, e. g., United States v. Gower*, 447 F.2d at 190 ("We find no reversible error in the mere fact that the indictment returned against Gower was in the identical form as the proposed indictment drafted by the United States Attorney's office.").

Defendants contend Sheehy was guilty of misconduct in suggesting that three other persons on the list not be indicted and in failing to list charges which could have been brought against them. We assume, without deciding, that this was misconduct. *See United States v. Briggs*, 514 F.2d 794, 800–06 (5th Cir. 1975) (holding that persons named as unindicted co-conspirators on recommendation of the prosecutor were denied due process because the indictments accused them of criminal conduct without indicting them). However, we have recognized that "ordinarily prosecutorial misconduct alone should not be the basis for setting aside an indictment or voiding a verdict." Prejudice must also exist. *State v. Hall*, 235 N.W.2d at 712. These defendants are not in a position to complain their indictments should be dismissed because the prosecutor influenced the grand jury not to indict others against whom the evidence was also sufficient. The requisite prejudice does not appear.

We hold that the trial court erred in sustaining the motion to dismiss on this ground also.

III. *The number of grand jurors.* Two of the seven members of the grand jury were absent when the indictments were returned. The remaining five jurors concurred in the indictments. Nonetheless, defendants assert the indictments are invalid because the two absent jurors were not replaced as provided in section 770.9. We have held that replacement of absent or excused grand jurors is not mandatory and the grand jury may continue to function so long as a quorum is present. *See State v. Blyth*, 226 N.W.2d 250, 264–66 (Iowa 1975). When the required number of grand jurors concur in an indictment, it is not invalidated by the failure to replace

absent or excused members. *State v. Billings*, 77 Iowa 417, 421–22, 42 N.W. 456, 458 (1889).

The indictments here were not vulnerable on this ground.

We find no merit in any of the grounds relied on by defendants to sustain the trial court's ruling.

REVERSED.

All Justices concur except REYNOLD-SON, C. J., and REES, J., who dissent in part, and LeGRAND, J., who takes no part.

REES, Justice (dissenting in part).

I concur in divisions I and III of the majority opinion, but respectfully dissent from division II and the result reached therein. I believe the record supports the trial court's conclusion that the prosecutor did violate the defendants' right to have the charges against them considered by an unbiased grand jury.

The majority opinion is largely based on its characterization of the list supplied the grand jury by the prosecutor as merely disclosing the defendants' names and potential charges against them, and a lack of prejudice resulting to the defendants from the failure to indict those listed by Sheehy as "unindicted coconspirators". Additional support for the result reached by the majority is found in its statement that the prosecutor may be permitted to request an indictment. Being unable to conclude that the inclusion of the "unindicted coconspirator" language is so attenuated from the rights of the defendant, I am impelled to dissent.

The "unindicted coconspirator" label was attached to three of the persons included on the list Sheehy submitted to the grand jury, which thus did more than merely disclose the existence of prima facie cases against those appearing before the grand jury. It is true that the failure to indict coconspirators does not, in and of itself, affect the defendants' rights. It is the correlation between this prosecutorial misconduct, *see United States v. Briggs*, 514 F.2d 794, 803–

04 (5th Cir. 1975), and the result reached by the grand jury which is, however, extremely relevant to establishing the cumulative influence of the list on the independent judgment of the grand jurors, and indicates the influence of the *whole* list on the grand jury. Only by the inclusion of inappropriate information on the list and such a correlation could an improper influence on the decision of the grand jury be detected. The indictments in issue were considered and returned by the grand jury during a single deliberation. The prosecutor's list influenced the grand jury to reach an improper decision on three individuals. There was a full correlation between the contents of the list and the grand jury's decision. I am unable to conclude that the grand jury was able to exercise an unbiased independent judgment on the remaining eight names on the list. Supportive is the fact that this grand jury was later reconvened to consider indicting an additional member of the sheriff's staff who had appeared before it. Significantly, his name had been omitted from the prosecutor's list. On these facts I would agree with the district court that the defendants were not indicted by an unbiased grand jury exercising its independent judgment. Such a situation differs materially from that where the language of a returned indictment coincides with that of a proposed indictment drafted by the prosecutor in jurisdictions which permit the prosecuting attorney to request an indictment.

The majority states that a prosecutor may request an indictment be returned. No Iowa cases are cited for this proposition. The majority also states that the prosecutor is "barred from expressing opinions on the facts and from attempting to influence the grand jury's action". I find these positions irreconcilable, as any request would necessarily incorporate factual considerations, and our case law to be supportive of only the latter. *See State v. Hall*, 235 N.W.2d 702, 712–13 (Iowa 1975); *State v. Hansen*, 215 N.W.2d 249, 251 (Iowa 1974); *Maley v. District Court*, 221 Iowa 732, 734, 266 N.W. 815, 817 (1936). Most recently, in *State v. Hall*, 235 N.W.2d at 712–13, we said: "[The county attorney] should not attempt to im-

properly influence or sway the deliberations or to induce a result he desires", as well as noting the obligation of the prosecutor "to present the matter impartially and with no attempt to influence the action of the grand jury".

The limitations on the role of the prosecutor established by the legislature and this court can best be understood as a means of preserving the independence of the grand jury's ultimate decision to indict, a condition mandated by the legislature in § 771.6: "Neither the county attorney nor any other officer or person except the grand jury must be present when the question is taken upon the finding of an indictment". To permit or allow the decision of the grand jury to be improperly influenced by the prosecutor would not only be violative of the underlying purpose of § 771.6, but would render an indictment functionally indistinguishable from a county attorney's information which may be filed on the prosecutor's own initiative, a result contrary to the evident intent of the legislature due to the procedural distinctions involved. *Compare* chapter 769 with chapters 770–773, The Code 1977 (now generally Iowa R.Crim.P. 5 and Iowa R.Crim.P. 3 and 4).

As I feel that a prosecutorial request for an indictment goes beyond proper comment on the legal sufficiency of the evidence before the grand jury and in effect invades the decision making function of the grand jury, I cannot concur in the majority position and, to the extent that that position underlies the majority's result, I must renew my dissent.

Additionally, I note that I would find adequate prejudice to the defendants to quash the indictments. As stated in *State v. Joao*, 53 Haw. 226, 229, 491 P.2d 1089, 1091 (1971):

A tendency to prejudice may be presumed when, in presenting cases to the grand jury, the trial court finds that the prosecutor or his deputies have engaged in words or conduct that will invade the province of the grand jury *or* tend to induce action other than that which the

jurors in their uninfluenced judgment deem warranted on the evidence fairly presented before them.

*See also Commonwealth v. Favulli,* 352 Mass. 95, 106, 224 N.E.2d 422, 430 (1967). We found a lack of prejudice to be present in *State v. Hall,* where the defendant had been subsequently found guilty by a jury at trial. Such is not the case here. Given the standard adopted by the majority and the unavailability of grand juror testimony to impeach the indictment, the burden of proof urged by the majority would be virtually impossible to meet. *See United States v. DiGrazia,* 213 F.Supp. 232, 233, 235 (N.D. Ill.1963); *State v. Joao,* 53 Haw. at 229, 491 P.2d at 1091; *State v. Good,* 10 Ariz.App. 556, 559–60, 460 P.2d 662, 665–66 (1969).

As I agree with the trial court that the defendants' due process right to have charges against them considered by an unbiased and unprejudiced grand jury had been violated, I would affirm.

REYNOLDSON, C. J., joins this dissent.